The People of the State of New York, Respondent, *v.* Jerry Baker, Appellant.

Second Department, December 30, 1974.

*William E. Hellerstein* and *William J. Gallagher* (*Robert H. Claridge* of counsel), for appellant.

*John M. Braisted, Jr., District Attorney* (*Norman C. Morse* of counsel), for respondent.

SHAPIRO, J. The defendant has been convicted of manslaughter in the second degree for causing the death of one Marvin Riddick on January 17, 1970. The central issue before us is whether the trial court properly ruled that there was a question of fact calling for the jury's determination whether Robert Edward Gardner, the prosecution's main witness, was an accomplice of the defendant or whether it should have ruled that Gardner was an accomplice as a matter of law. The defendant also claims that the trial court had no authority to amend the indictment and that the submission to the jury of the crime of manslaughter in the second degree as a lesser included offense of the indictment, which charged manslaughter in the first degree, was improper. We affirm.

### THE FACTS

For a clear understanding of the accomplice issue, it is necessary to recapitulate Gardner's testimony. In addition to the defendant, Gardner had also been arrested in connection with Riddick's death. He waived immunity and testified before the Grand Jury. No bill was returned against him. At the trial, he testified that two men, known to him as Joe and Harris, owed some money to the defendant. The latter suggested to Gardner that they drive the two men to a desolate part of Long Island and leave them there to convince them that the defendant meant to be repaid. A young woman accompanied the foursome to their destination. When they arrived, the defendant, brandishing a revolver, told Joe and Harris to start running across a field. As he was about to shoot at them, Gardner and the woman prevailed upon him not to do so. The three of them thereupon drove off.

The next day, January 17, 1970, Gardner went to a cocktail lounge in Queens. While there he had four drinks. Riddick

arrived at the lounge at 4:00 or 5:00 P.M. and the defendant entered the lounge at about 8:30 P.M. Gardner asked the defendant for a ride to his home on Staten Island. Before he responded, Riddick and the defendant went into the men's room. The defendant was the first to emerge. He asked Gardner whether he was ready. When Gardner entered the defendant's automobile, Riddick was in the passenger seat. Gardner seated himself in the back and the trio proceeded to Staten Island in apparent good humor and they all participated in the sniffing of cocaine.

The defendant bypassed the exit to Gardner's house. When Riddick asked why, the defendant said he was going to a friend's house. At that point Gardner first realized that the defendant intended to strand Riddick, as he had done the preceding evening with Joe and Harris. When they reached a deserted street the defendant and Riddick left the car. Gardner moved into the front passenger seat. He saw the defendant punch and kick Riddick and then heard three shots and saw Riddick "standing, but in a crimped fashion".

Gardner did not see the weapon, but observed the defendant lift his coat and put something into his back pocket. The defendant then returned to the car and said that he had fired a few shots to scare Riddick and that he "should have took [sic] his ass to Philadelphia". They both laughed about leaving Riddick stranded.

The defendant and Gardner left Staten Island and returned to the lounge in Queens. They then went to another bar and at about 10:00 P.M. the defendant dropped Gardner at his mother's house. Gardner learned of Riddick's death the next morning and did not see the defendant for a number of months thereafter.

The defendant contends that Gardner was an accomplice as a matter of law and that his testimony was not corroborated. Although we are of the view that Gardner's testimony was sufficiently corroborated, we deem it advisable, in view of the new statutory "accomplice" statute, to decide whether the trial court properly left it to the jury to determine whether Gardner was an accomplice.

CPL 60.22 provides in pertinent part:

"1. A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.

"2. An 'accomplice' means a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in:

"(a) The offense charged; or

"(b) An offense based upon the same or some of the same facts or conduct which constitute the offense charged."

This definition replaced the previous judicially formulated rule under which the test was whether an alleged accomplice was so connected with the crime that he could have been convicted either as a principal or as an accessory before the fact (see *People v. Beaudet,* 32 N Y 2d 371). The accomplice rule is intended to preclude a conviction based solely upon the testimony of persons who are criminally implicated in, and possibly subject to prosecution for, the factual transaction on trial. The consequence of the adoption of the statutory definition was to broaden the definition of an accomplice in order to provide a more equitable and consistent standard in determining when the corroboration requirement is applicable (Practice Commentary in McKinney's Cons. Laws of N. Y., Book 11A, CPL 60.22, pp. 194–195; see, also, *People v. Brooks,* 34 N Y 2d 475).

The Trial Judge instructed the jury that if it found that Gardner could reasonably be considered to have participated in the homicide, or in a crime based upon the same facts, it could consider him an accomplice. The court further charged that Gardner could not be classified as an accomplice if he engaged in such acts innocently, without the intent to commit a crime or without knowledge that his acts were being exploited to aid in the commission of a crime which he did not intend to commit. The jury was also told to determine "whether he had the intent to commit the crime that this defendant is charged with by this indictment, or whether he showed a reckless conduct that caused him to share whatever guilt, if any, you may find of this defendant here" and "if his participation was to a limited extent that didn't go as far as the crime charged either as to the intent crime, or as to the reckless abandonment crime, then you may not find him an accomplice."

The instructions were proper. A witness may be labeled an accomplice only if there is a showing that he took part in the crime charged or in an offense based upon the crime charged. Intent always enters as an element of the crime (*People v. Wheatman,* 31 N Y 2d 12, cert. den. *sub nom. Marcus v. New York,* 409 U. S. 1027; *People v. Chamberlain,* 38 A D 2d 306). It does not appear, at least as a question of law, that Gardner had guilty knowledge of the defendant's intention to commit a

homicide. Since there is a dispute as to the nature of Gardner's participation in the acts leading up to the crime charged, the accomplice question was properly one for the jury (*People* v. *Sweeney*, 213 N. Y. 37; Ann. 19 ALR 2d 1352, 1374 Accomplices — Question of Law or Fact).

There is no question that, absent Gardner's testimony, the evidence would not have supported a conviction. However, his testimony that the trio went to Staten Island, that the defendant punched Riddick, that Gardner heard three gunshots and that the defendant told him that he had fired a few shots to scare Riddick was certainly sufficient, if believed, to support the conviction.

Gardner's remaining testimony tended to negate his participation in the crime. Thus, the question of whether he was an accomplice was one of fact for determination by the jury.

The defendant contends that Gardner was an accomplice, as a matter of law, because he "may reasonably be considered to have participated in" the instant crime or a variation thereof (CPL 60.22, subd. 2, pars. [a], [b]). In *People* v. *Brooks* (34 N Y 2d 475, *supra*) the defendant was convicted of petit larceny for the theft of jewelry from a residence, upon the testimony of the receiver who had purchased the jewelry from the defendant. The court held that the receiver was not an accomplice of the defendant thief. In so holding, the court rejected the argument that although the defendant and the witness had committed crimes which were separate in law they were still accomplices, because the witness was "'*in some way* criminally implicated in, and possibly subject to, prosecution for the general conduct or factual transaction on trial'" (see *People* v. *Brooks, supra*, p. 483 [dissenting opn. of WACHTLER, J.]).

The defendant's argument that Gardner was an accomplice rests on pure speculation. He asserts that Gardner was at the lounge waiting for Riddick, that when Gardner saw Riddick he notified the defendant and that Gardner knew in advance of the ride to Staten Island, that the defendant intended to strand Riddick in a remote section. The record before us does not compel that conclusion as a matter of law and therefore the extent, if any, of Gardner's participation in the crime was properly submitted to the jury as a question of fact.

### AMENDMENT OF THE INDICTMENT.

The indictment, as filed, charged the defendant with the crime of manslaughter in the first degree and asserts in relevant part: "The Grand Jury * * * accuse Jerry Baker of

the crime of Manslaughter in the First Degree * * * committed as follows: * * * with intent to cause serious physical injury to another person, caused such injury to Marvin Riddick, by means of a deadly weapon, to wit, a gun ''.

Prior to the calling of his first witness, the prosecutor moved to amend the indictment by deleting the words '' caused such injury to Marvin Riddick '' and to substitute therefor the words '' caused the death of Marvin Riddick ''. The motion was granted. The defendant contends the court had no power to grant the amendment. We do not agree.

From time to time errors occur in indictments which do not substantially interfere with counsel's preparation for trial or with his conduct of the trial. In such cases the CPL provides the court with discretion to amend the indictment to cure the defect, upon motion by the People. The statute (CPL 200.70), as it read at the time here in question, provided in pertinent part:

'' 1. At any time before or during trial, the court may * * * order the amendment of an indictment with respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed the indictment, or otherwise tend to prejudice the defendant on the merits * * *.

'' 2. An indictment may not be amended in any respect which changes the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed it; nor may an indictment * * * be amended for the purpose of curing:

'' (a) A failure thereof to charge or state an offense; or

'' (b) Legal insufficiency of the factual allegations ''.

The indictment should have read '' caused the death of '' instead of '' caused such injury to ''. This clearly was nothing more than an inadvertent error and, as no substantial rights of the defendant were infringed, the indictment was properly amended.

Since the indictment accused the defendant of *manslaughter* in the first degree, committed with use of a deadly weapon, the defendant could not possibly be surprised by the amendment. The indictment stated the crime, the factual allegation described the commission of the crime and the defendant did not seek an adjournment after the indictment was amended since he, obviously, was prepared to defend himself against the manslaughter

charge and had not been prejudiced " on the merits " (CPL 200.70, subd. 1).

The defendant's reliance upon *People* v. *Zambounis* (251 N. Y. 94) is misplaced. The difference between that case and this is that there the accusatory instrument failed to state the crime charged and the acts which constituted the crime. Here the indictment clearly stated the crime charged— manslaughter in the first degree and how it was committed.

### THE SUBMISSION OF MANSLAUGHTER
### IN THE SECOND DEGREE

As to the defendant's contention that the trial court erred in submitting manslaughter in the second degree to the jury as a lesser included offense of manslaughter in the first degree, we find (1) that there was a view of the evidence which supported that submission and (2) that, in any event, the defendant waived any error in this regard by his failure to object (CPL 300.50, subd. 1; *People* v. *Asan,* 22 N Y 2d 526; *People* v. *Usher,* 39 A D 2d 459, amd. 40 A D 2d 1079, affd. 34 N Y 2d 600; cf. *People* v. *Wall,* 34 A D 2d 215.; *People* v. *Moyer,* 27 N Y 2d 252).

The defendant's remaining contentions lack merit and require no discussion. Accordingly, the judgment appealed from should be affirmed.

HOPKINS, Acting P. J., MARTUSCELLO, LATHAM and COHALAN, JJ., concur.

Judgment of the Supreme Court, Richmond County, rendered September 22, 1972, affirmed.