THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE RAMOS, Appellant.

Second Department, June 25, 1979

APPEARANCES OF COUNSEL

*Gould & Reimer (Franklyn Gould* and *Arthur M. Unterman* of counsel), for appellant.

*Eugene Gold, District Attorney (Michael J. Halberstam* of counsel), for respondent.

**OPINION OF THE COURT**

HOPKINS, J. P.

The defendant's chief complaint against his conviction is the failure of the court to charge that one of the prosecution's witnesses was an accomplice of the defendant, and that under the statute the testimony of an accomplice must be corrobo-

rated (see CPL 60.22). No request was made of the court for that charge by the defendant and no exception was taken by the defendant to the court's failure to charge in accordance with the statute.

We hold that the failure of the court to charge the jury as required by statute is reversible error. Hence, the judgment must be reversed and a new trial ordered. Where the case against the defendant is substantially dependent on an accomplice's testimony, the court should charge the jury that the accomplice's testimony must be corroborated by evidence tending to connect the defendant with the commission of the offense for which he has been indicted.

## I

The defendant was indicted for criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the second degree. Indicted with the defendant for the same crimes was Israel Gutierrez.

At the trial it was established that the Brooklyn South Narcotics Division was engaged in activities known as Buy Operation 50, through which the police sought to identify dealers in narcotics and to make purchases from them. As a result of the investigation, three men were asserted to be dealers—the defendant, Gutierrez and Roberto Vasquez.

On January 26, 1977, Police Officer Garcia purchased 20 packets of narcotics from Gutierrez; on January 31, 1977, Gutierrez promised Garcia over the telephone that he would sell two ounces of heroin to Garcia. On February 4, 1977, Garcia and the other members of the team involved in the activities met for the purpose of consummating the purchase of the heroin. Garcia was fitted out with a Kel transmitter and given $4,000 in cash. The team then went to a point in Brooklyn where they met a confidential informant who had previously introduced Garcia to Gutierrez for the purpose of buying narcotics.

The confidential informant and Garcia drove to a building on 36th Street in Brooklyn, where they met Gutierrez, Garcia was told by Gutierrez to return later, because his connection— "Popo"—had not arrived. Garcia and the informant returned to 44th Street and met the other members of the team. It was decided by the team that Police Officer Miranda, posing as

Garcia's wife, would take Garcia's place in the operation; Miranda was accordingly equipped with the transmitter and received the $4,000 in cash.

Thereafter, the informant and Miranda went to the apartment building on 36th Street at 10:25 P.M.; the other members of the team were located about the building. Within the apartment Gutierrez told Miranda that the connection would arrive shortly. When no one had come by 12:20 A.M., Miranda left the apartment and saw the rest of the team. Finally, Miranda went back to the apartment and at 1:00 A.M. was told by Gutierrez that the drugs would arrive in 45 minutes; at 2:50 A.M. Gutierrez informed Miranda that he was going downstairs to meet the connection. Five minutes later Gutierrez came back and told Miranda to go downstairs to talk with the connection, since the latter would not come to the apartment.

Miranda then went with Gutierrez to the street and found the defendant in a car. Miranda testified that while the three were crossing the street the defendant handed Gutierrez a shiny package. In the apartment Gutierrez handed Miranda the package and told her to weigh it. After weighing it, Miranda gave the defendant $3,050.

The defendant testified that he had gone to Gutierrez' apartment to purchase heroin. He said that he had seen Miranda in the apartment, but denied that he met her in the street, or that he had sold heroin to her or received money from her.

During the course of the trial a mistrial was declared as to Gutierrez. The prosecution called Gutierrez as a witness in rebuttal. Gutierrez testified that he did not sell drugs, and his testimony substantially agreed with Miranda's testimony regarding the transaction between herself, Gutierrez and the defendant.

The defendant was convicted of criminal sale of a controlled substance in the first degree. Although other issues are raised by the defendant, his main contention is that the court was in error in failing to charge both that Gutierrez was an accomplice and that the defendant could not be convicted of any offense upon Gutierrez' testimony "unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22, subd 1).

## II

CPL 60.22 provides, in part:

"1. A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.

"2. An 'accomplice' means a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in:

"(a) The offense charged; or

"(b) An offense based upon the same or some of the same facts or conduct which constitute the offense charged."

"The law looks upon accomplice testimony with a suspicious eye" (People v Duncan, 46 NY2d 74, 78-79). Wigmore traces the distrust in the English courts from its beginnings in the 18th century to the point in recent times in England where it has been virtually established as a rule of law that an accomplice's testimony must be corroborated (7 Wigmore, Evidence [Chadbourn ed], § 2056, pp 405-406, n 4; see, e.g., Davies v Director of Public Prosecutions [1954], 1 All Eng L Rep 507, 513). Before the enactment of section 399 of the Code of Criminal Procedure in our State in 1881, the rule was not absolute, but merely cautionary: "Although it is not usual to suffer a conviction upon the wholly uncorroborated evidence of an accomplice, and juries are advised not to convict without a confirmation as to the material facts; still, if the jury are fully convinced of the truth of the statements of a witness thus situated, they may convict upon his testimony alone" (Linsday v People, 63 NY 143, 154).

Section 399 of the Code of Criminal Procedure changed the common law so as to prohibit a conviction standing on the testimony of an accomplice alone. By 1903 the Court of Appeals considered the statutory provision so well recognized as to have "long been asserted and regarded as practically imperative" (People v O'Farrell, 175 NY 323, 325). Upon revision of the code by the Criminal Procedure Law effective in 1971, the rule was retained, even though there were both discussion and debate looking toward abandonment of the absolute rule and a reversion to the cautionary concept of the common law (see Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 60.22, p 194).

Hence, we must interpret CPL 60.22 still as an "imperative". As was said recently in People v Basch (36 NY2d 154,

157): "If the undisputed evidence establishes that a witness is an accomplice, the jury must be so instructed but, if different inferences may reasonably be drawn from the proof regarding complicity, according to the statutory definition, the question should be left to the jury".

## III

There is no doubt in this case that on the undisputed evidence Gutierrez was an accomplice. The prosecution put him in the role of a codefendant, indicted for the same crimes as was the defendant (cf. *People v Diaz,* 19 NY2d 547, 550-551). The testimony of Garcia and Miranda and his own testimony cast him as an accomplice (cf. *People v Baker,* 46 AD2d 377, 380-381). He was both criminally implicated in, and subject to, penal sanctions for his actions (see *People v Fielding,* 39 NY2d 607, 610). That Gutierrez denied his complicity with the defendant and that his testimony differed in some particulars from the testimony of Garcia and Miranda, are, of course, circumstances within the record, but those circumstances cannot surmount the weight of the proof, including his own testimony, concerning his participation in the events. It is hardly an isolated instance in human experience for the accomplices to fall out, and each to accuse the other of the burden of the crime for which they have been indicted.

At the very least, the issue whether Gutierrez was an accomplice was a matter for the jury under proper instructions from the court (see *People v Beaudet,* 32 NY2d 371, 376), and upon a finding by the jury that he was an accomplice, his testimony under the statute would have to be corroborated.

Here the Trial Judge gave no instructions to the jury at all concerning the testimony of Gutierrez. In the light of the mandate of the statute this failure was error, unless we are to say that the defendant's failure to request the charge or to take exception to the omission allows us to overlook the error.

## IV

In *People v Johnson* (6 AD2d 181, 183) the defendant had been convicted of possession of a narcotic drug with intent to sell. The conviction, in the words of the opinion (BERGAN, J.), "rest[ed] very heavily on the testimony of the woman" who was accompanying the defendant when the arrest was made. The court did not definitively hold that the woman was an

accomplice as a matter of law, but said that she was sufficiently implicated that her status as an accomplice should have been submitted to the jury for determination. No request had been made by the defendant for a charge as to accomplice testimony, nor was an exception taken by the defendant to the failure to charge. Nevertheless, the court reversed the conviction on the ground that properly the jury should have been instructed under the statute, saying (supra, p 185): "Her testimony thus lies close to the center of gravity of the case; in no view of the proof can it be regarded as unimportant, even though the bare possibility might exist that there could be a conviction without it. The defendant correctly argues, therefore, that in the absence of a charge with respect to the necessity of corroborating accomplice testimony, it cannot be determined on review whether 'the jury found that any evidence other than Woodall's testimony tended to connect defendant-appellant with the commission of the crime, nor can it be determined whether the jury believed any testimony other than that of accomplice Woodall.' (Cf. Code Crim. Pro., § 399.)"

In *People v Bell* (32 AD2d 781) the defendant had been convicted of robbery in the first degree and related crimes. The court found that evidence against the defendant was received from a witness who was an accomplice as a matter of law. Although the defendant had not asked for a charge that corroboration of the accomplice's testimony was required, and no exception had been made by the defendant to the omission so to charge, the court reversed, saying (supra, p 782): "In the absence of a charge that Davis' testimony had to be corroborated, we cannot be certain as to the jury's basis for convicting Bell. We are not certain whether the jury convicted Bell on his confession, on Davis' testimony, or on a combination of both. Not knowing what credit and weight the jury gave to the confession, we cannot say whether the jury would have returned a verdict of guilty if they had been charged that Davis' testimony had to be corroborated (People v. Donovan, 13 N Y 2d 148, 153). Accordingly, a new trial is required. Although no exception was taken to the failure to charge that Davis was an accomplice as a matter of law, in the interests of justice we order a new trial."

We think that the better practice is that when it is apparent that the case against the defendant rests substantially on the testimony of an accomplice, the Trial Judge is under a duty to charge the jury, even without a request from the

defendant, that the accomplice's testimony must be corroborated in accordance with the language of CPL 60.22.*

Even in the Federal courts, where the common-law rule prevails, the need of cautionary instructions by the Trial Judge relating to accomplice testimony cannot be avoided by the defendant's failure to request such a charge in cases where the guilt of the defendant largely hinges on the testimony of the accomplice (see, e.g., *McMillen v United States,* 386 F2d 29, cert den 390 US 1031; *United States v Evans,* 398 F2d 159; *Williamson v United States,* 332 F2d 123; *Tillery v United States,* 411 F2d 644; *Stephenson v United States,* 211 F2d 702; *United States v Owens,* 460 F2d 268). In contrast, where the record indicates that other evidence is present in the record which strongly corroborates the accomplice testimony, plain error will not be found in the absence of a request or exception (see, e.g., *United States v Hudson,* 496 F2d 698; *United States v Martin,* 489 F2d 674, cert den 417 US 948; *United States v Leonard,* 494 F2d 955). In California, under a statute requiring an instruction similar to CPL 60.22, the court must charge the jury with respect to accomplice testimony even though the defendant fails to make such a request or exception *(People v Bevins,* 54 Cal 2d 71).

The duty of the Trial Judge to charge in accordance with the statute without the prompting of the defendant resembles in its force and necessity other requirements which must be observed by the Trial Judge *sua sponte* (see, e.g., *People v Gomberg,* 38 NY2d 307, 313-314 [conflict of interest of attorney in representing codefendants]; *People v Skinner,* 57 AD2d 785; *People v Ramos,* 59 AD2d 859 [failure to inform counsel as to counts to be submitted to jury]; *People v Patterson,* 39 NY2d 288, 296 [impermissible burden of proof placed on the defendant]; *People v Rivera,* 60 AD2d 852 [failure to marshal evidence in violation of CPL 300.10]).

Where, as here, the statutory command is clear and is based on reasons of compelling public interest, we should reverse in the interest of justice (see *People v Rainey,* 27 NY2d 748; *People v Felcone,* 43 AD2d 976), whenever the proof of guilt, without the accomplice testimony, is less than overwhelming. In this case, we find that the accomplice testimony substan-

---

* In the recent case of *People v Minarich* (46 NY2d 970), the Court of Appeals ordered a new trial where, although a certain party was an accomplice as a matter of law, as conceded by the People on appeal, the Trial Judge failed to so instruct the jury.

tially contributed to the defendant's conviction, and a reversal is required.

## V

Accordingly, we reverse in the interest of justice and order a new trial. We hold that a Trial Judge should, even in the absence of a request, charge the requirements of CPL 60.22, whenever the case against the defendant depends substantially on accomplice testimony.

COHALAN, J. (concurring). I concur in the result reached by the majority. However, I would hold that even in the absence of a request, a Trial Judge should charge the requirements of CPL 60.22 whenever the case against the defendant depends in any degree upon accomplice testimony.

TITONE and SUOZZI, JJ., concur with HOPKINS, J. P.; COHALAN, J., concurs in the result, with an opinion.

Judgment of the Supreme Court, Kings County, rendered June 15, 1978, reversed, as a matter of discretion in the interest of justice, and new trial ordered.