OPINION OF THE COURT
Anne G. Feldman, J.
This opinion addresses the trial court’s power to set aside a posttrial conviction based principally upon the sworn testimony of a child who that court concludes did not understand the nature and importance of an oath.
*84 PROCEDURAL BACKGROUND
Defendant was charged with two counts of forcible sodomy in the first degree (Penal Law § 130:50); three counts of forcible sexual abuse in the first degree (Penal Law § 130.65 [1]); one count of sexual abuse in the first degree (victim less than 11 years old; Penal Law § 130.65 [3]), and endangering the welfare of a child (Penal Law § 260.10). After a trial in absentia he was acquitted of all counts involving forcible sexual assault and convicted of the nonforcible sexual abuse count and of endangering the welfare of a child. At the close of the People’s case and again at the close of defendant’s case, defense counsel moved for a trial order of dismissal pursuant to CPL 290.10 (1) (b). As the Trial Judge, I reserved decision on that motion, preferring to await the jury verdict (see, People v Marin, 102 AD2d 14 [2d Dept 1984], affd 65 NY2d 741).
Defense counsel continues to move for relief under CPL 290.10 and, in the alternative, seeks to set aside the verdict pursuant to CPL 330.30.
Both motions require resolution of the following questions: (1) when the Trial Judge determines that the State’s principal witness, a boy of nine, was- incompetent to testify under oath, was there sufficient corroboration of the boy’s testimony to meet the requirements of CPL 60.20; and (2) even if there was sufficient corroboration of his testimony can the conviction stand in the absence of a jury instruction regarding the necessity for corroboration?
To answer these questions a review of the* procedural and factual background of the case is necessary.
TESTIMONIAL CAPACITY
Prior to jury selection this court held a preliminary examination as required by CPL 60.20 to determine Dominick Bookhard’s testimonial capacity.[1] At that proceeding he was so *85 unresponsive to my questions that I found him incapable of providing sworn testimony. Candidly acknowledging the weakness of the corroborating evidence, after the luncheon recess the trial assistant requested a second opportunity for the boy to demonstrate his capacity to take and understand the nature of an oath. At this second interview the child was more responsive and articulated in a persuasive manner his understanding and recognition of the importance of testifying truthfully. For example, in the context of a family situation, he was able to give an example of truth telling and to explain the consequence of lying. On the basis of the boy’s answers, behavior and demeanor on this second occasion, I ruled that he was able to understand the nature of an oath and qualified him as a sworn witness.
Unfortunately, in the context of the trial, this assessment turned out to be wrong. It become increasingly clear during Dominick’s testimony' not only that the boy did not understand the importance of telling the truth but that at times he became so unnerved by the questioning that he did not even know what the truth was. This was particularly apparent during cross-examination. His manner and answers indicated that his sole interest was to end the ordeal of testifying and that he was answering questions without regard to the content of what he was saying. He turned repeatedly to the court for guidance in responding to a relatively gentle cross-examination concerning both the details of the alleged sexual attack and his own background; he answered comparatively innocuous questions incorrectly, perhaps, trying to divine what answer was being sought and to placate the cross-examiner by supplying the desired answer, without regard for his answers’ accuracy or truthfulness.
It is of course understandable that a nine-year-old boy might be uqeasy or confused by the pressures of cross-examination. However, this child’s panicked demeanor, his facial expressions, and his constant need for reassurance and guidance from the court led me to conclude both that he had forgotten his promise to testify truthfully and that contrary to *86 his representation at the preliminary examination, he had no recognition that adverse consequences could follow if he testified falsely under oath. As the record indicates, I voiced my concern about the child’s testimonial capacity to counsel at several side Bar conferences both during his testimony and at its conclusion. However, in the absence of any motion from defense counsel at that point I permitted the trial to continue, indicating in reserving decision on the motion for a trial order of dismissal that the motion would probably be granted if the jury convicted the defendant.[2]
TRIAL TESTIMONY
On direct examination Dominick testified that on the day of the incident he came home from school unexpectedly early; that the defendant, a distant relative, who had inexplicably left some of his belongings at the boy’s apartment some months earlier, was outside of his house and took him to lunch at a nearby church; that he then took him to another building located in the same housing project in which Dominick lived, dragged him to an upper floor hallway of that building and, over Dominick’s oral and physical protestations, sexually assaulted him by touching his buttocks; that he then took him to another floor in the same building where, after applying vaseline to his own penis, he anally sodomized Dominick, gave him tissue to wipe himself off, and then took him home.
The only corroboration of the boy’s testimony came from his mother who testified that when her son and the defendant arrived in the apartment her son acted in an unusual, withdrawn manner; that the defendant left shortly thereafter, saying he was going shopping but did not return; and that she wiped a white substance and what she believed to be dried blood from her son’s anus area. The doctor who examined Dominick that same day found no medical evidence either of injury to the boy’s anus or sexual assault.
*87 LEGAL ANALYSIS
A child under the age of 12 is presumed unable to give sworn testimony (People v Nisoff, 36 NY2d 560, 566 [1975]). Before such a child may give any testimony the Legislature requires the Trial Judge to make a determination that the child would be a witness of sufficient intelligence and mental capacity to justify the reception of his or her testimony; and, in order to allow that same child to testify as a sworn witness, the Judge must be satisfied that the child displays an understanding and appreciation of the nature of an oath. (CPL 60.20 [2]; People v Nisoff, supra, at 566.)
Because the Legislature has placed the responsibility for determining testimonial capability upon the Trial Judge who has had the unique opportunity to observe the child’s manner, demeanor and presence of mind on the witness stand, appellate courts give great weight to that court’s determination of a child’s testimonial capacity, rejecting it only when the record clearly shows that the trial court has abused its discretion (People v Parks, 41 NY2d 36, 46 [1976]).
There is no reported case of a trial court reassessing its CPL 60.20 determination of a witness’s testimonial capacity as a result of that witness’s testimony at trial. As a rule, the determination of that capacity made prior to the trial is not altered by events at the trial. However, as this case demonstrates, the more informal, comfortable atmosphere in which the exploration of a child’s testimonial competence is conducted can result in a misevaluation of the child’s capacity. Under these circumstances the trial court has an obligation to alter its determination. To hold otherwise would require that court to adhere mechanically to a ruling made in the exercise of its discretion which it knows to be erroneous.
Having concluded that CPL 60.20 places on the trial court an ongoing responsibility to determine the witness’s testimonial capacity, what steps may that court take when it has concluded a witness’s testimony should not have been given under oath? The prosecution argues that at the trial court level only a motion by defense counsel at the conclusion of the child’s testimony could have cured this defect and that this court may not grant relief at this juncture. I disagree.
Although the better practice would have been to instruct the jury, sua sponte, that the boy was not competent to testify under oath and that therefore defendant could not be convicted solely on the basis of his unsworn testimony, the court’s *88 failure to follow that route does not render it powerless to act now.
A Trial Judge may set aside a verdict “[on a]ny ground appearing in the record which, if raised upon an appeal * * * would require a reversal * * * of the judgment as a matter of law by an appellate court” (CPL 330.30 [1]). Accordingly, “[t]he power granted a Trial Judge by CPL 330.30 (subd 1) * * * is * * * limited to a determination that the trial evidence was not legally sufficient to establish the defendant’s guilt of an offense of which he was convicted (CPL 470.15, subd 4, par [b])” (People v Carter, 63 NY 530, 536 [1984]; emphasis supplied).
" 'Legally sufficient evidence’ means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof; except that such evidence is not legally sufficient when corroboration required by law is absent” (CPL 70.10 [1]).
Having concluded that Dominick was not capable of providing sworn testimony this court, by permitting the jury to consider it as such, committed an error which “if raised upon an appeal * * * would require a reversal * * * as a matter of law.” (CPL 330.30 [1].) Failing to instruct the jury on the necessity of corroboration of Dominick’s testimony allowed the jury to convict defendant on what was essentially unsworn testimony.
"The purpose of requiring corroboration of unsworn testimony, of course, is to ensure its trustworthiness. A witness incapable of comprehending the oath may not understand the importance of truthfulness in criminal proceedings or the impact false testimony could have on the accused. Thus, the law requires that before unsworn statements can support a conviction they must be corroborated to elevate their trustworthiness to the level associated with sworn testimony”. (People v Groff, 71 NY2d 101, 108 [1987].)
As with accomplice testimony, corroboration of an unsworn witness is required to establish that the witness is telling the truth. The law views both the testimony of the accomplice and the unsworn witness with some degree of skepticism and therefore requires corroboration as a matter of fairness to *89 defendant (People v Groff, supra, at 107).[3] Where a conviction rests substantially on the testimony of an accomplice, failure to instruct the jury that an accomplice’s testimony requires corroboration is error, even absent a request by defendant (People v Saraireh, 134 AD2d 464 [2d Dept 1987]; People v Ramos, 68 AD2d 748, 753 [2d Dept 1979]). By the same token, failure to instruct the jury on the need to corroborate a child’s unsworn testimony also constitutes error[4] which this court is empowered to remedy.
Accordingly, defendant’s motion to set aside the verdict pursuant to CPL 330.30 (1) is granted.

, CPL 60.20 provides:
"1. Any person may be a witness in a criminal proceeding unless the court finds that, by reason of infancy or mental disease or defect, he does not possess sufficient intelligence or capacity to justify the reception of his evidence.
"2. Every witness more than twelve years old may testify only under oath unless the court is satisfied that such witness cannot, as a result of mental disease or defect, understand the nature of an oath. A child less than twelve years old may not testify under oath unless the court is satisfied that he
*85 understands the nature of an oath. If the court is not so satisfied, such child or such witness over twelve years old who cannot, as a result of mental disease or defect, understand the nature of an oath may nevertheless be permitted to give unsworn evidence if the court is satisfied that the witness possesses sufficient intelligence and capacity to justify the reception thereof.
"3. A defendant may not be convicted of an offense solely upon unsworn evidence given-pursuant to subdivision two.”

. I conclude, however, that a trial order of dismissal is not the appropriate remedy. That motion can only be granted when "the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense”. (CPL 290.10 [1] [a].) As will be seen, the corroborative testimony given by the boy’s mother, if believed by the jury, would have been sufficient to sustain a conviction on the top count. In acquitting defendant of the sodomy charge the jury apparfently rejected her testimony concerning her son’s physical condition. However, a ruling on a motion for a trial order of dismissal cannot consider the jury’s verdict. It must speak only to the evidence presented to the jury.

. Of course, the level of corroboration varies according to its purpose. Corroboration of accomplice testimony requires evidence tending to connect defendant with the commission of the crime. Unsworn witness testimony must be corroborated both by evidence tending to link the defendant to the crime in addition to evidence tending to establish that the crime was committed (People v Groff, 71 NY2d 101, 109).

. The pattern jury instruction on corroboration suggests that the court highlight for the jury the testimony it may consider as corroborative (1 CJI[NY] 7.51, at 335). In this case that testimony included Dominick’s mother’s assertion that she observed a white substance in the area of her son’s anus and what she concluded was dried blood on his leg. Both of these observations were germane only to the boy’s claim that he had been sodomized — a count on which he was acquitted. The corroboration of the boy’s testimony that the defendant had forcibly sexually abused him was wholly circumstantial. It consisted of his mother’s testimony that he had arrived home with the defendant and that his behavior immediately thereafter had been unusual. In view of other evidence in the case pointing to the mother’s animosity toward the defendant it is problematic whether the jury would have found any of her testimony credible.