The People of the State of New York, Respondent, v James Watson, Appellant.

Second Department, April 18, 1977

*Abraham Werfel* for appellant.

*John J. Santucci, District Attorney (Michael R. Berlowitz* of counsel), for respondent.

HOPKINS, Acting P. J.   On November 14, 1973 the complainant, then aged 17, accompanied the defendant to an American Legion Hall to acquire two free dance tickets in exchange for her assistance in selling other tickets for the defendant. There, the defendant restrained the complainant in a locked room and compelled her, by threatening her with a knife, to engage in sexual intercourse with him.

The complainant, upon leaving the American Legion Hall, told her boyfriend that she had been raped. Later the same day, she submitted to interrogation by the police and a medical examination by a physician. The doctor's diagnosis disclosed the presence of semen and a minor bruise on the complainant's back, which the complainant attributed to the rape. Several witnesses who testified at the trial described the complainant as upset, embarrassed, and red-eyed from crying subsequent to the incident.

CONTENTIONS

The defendant raises the following arguments: (1) an erroneous charge pertaining to corroboration of the element of identity with regard to the crime of rape in the first degree became the law of the case and, consequently, such corroboration, though lacking, was necessary to convict him; (2) there was insufficient corroboration of the essential element of lack of consent with regard to the crime of rape in the first degree; (3) there was insufficient corroboration of the elements of the crimes of possession of weapons and unlawful imprisonment in the first degree; (4) the conviction of the crime of unlawful imprisonment was improper, because the proof of the elements of confinement and substantial risk of serious injury was not independent of the alleged rape; (5) the court improperly ruled to permit the prosecution's use, on cross-examination, of a prior conviction of attempted rape in the first degree; (6) there were several instances of evidence improperly admitted by the trial court which deprived him of a fair trial; and (7) he was improperly sentenced as a second felony offender.

We affirm. The doctrine of the law of the case does not apply under the circumstances here. The only corroboration

required under the statute in the form then existing related to the elements of lack of consent and the attempt to engage in sexual intercourse (see Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 130.16), both of which were established by the proof at the trial. We find, in addition, that the defendant was accorded a fair trial and was duly sentenced.

## I

### LAW OF THE CASE

The Trial Judge charged the jury, without exception taken by either the prosecution or the defendant, that all of the elements of the crime of rape in the first degree, including the identity of the defendant, must be corroborated, in order to convict. This was clearly an erroneous charge. The controlling statute at the time of the commission of the crime (Penal Law, former § 130.15) required corroboration only as to the elements of the attempt to engage the victim in sexual intercourse and lack of consent. No corroboration of the identity of the defendant was then required for a charge of forcible rape.

Nevertheless, the defendant contends on this appeal for the first time that the unexcepted-to charge, although erroneous, became the law of the case. Consequently, he urges that the jury was bound to follow those instructions and that, since there was insufficient evidence in the record to corroborate the identity of the defendant as the perpetrator, his conviction must be reversed.

The law of the case has been said to be applicable to a criminal proceeding (see *People v Lobel,* 298 NY 243, 254, mot for rearg den 298 NY 920; *People v Doyle,* 304 NY 120, 121-122; *People v Adams,* 33 AD2d 882).

However, such cases are distinguishable from the present appeal. In *Adams* the Fourth Department unanimously reversed a conviction of second degree burglary for entering a dwelling at night with the intent to commit the crime of rape. The trial court had erroneously charged the jury, without exception, that the complainant's testimony as to the elements of the crime of burglary in the second degree must be corroborated. The appellate court held that this charge became the law of the case. However, that court's reversal was based upon the finding that there was insufficient evidence to corroborate the defendant's intent to commit the crime of rape. Corrobora-

tion of this element of the crime had properly been charged by the trial court.

Similarly, in *Doyle* the unexcepted-to charge, which became the law of the case, was not the basis of the court's reversal of the conviction. In *Lobel* the court merely noted that where an unchallenged instruction to the jury becomes the law of the case, it must be assumed that the jury gave full heed to it in reaching its verdict.

The doctrine of the law of the case is a rule of practice reflecting an articulation of sound policy that, when an issue is once judicially determined, that determination should end the matter when the issue is later confronted by the Judges, and courts of co-ordinate jurisdiction (see, e.g., *United States v United States Smelting Co.,* 339 US 186, 198; *Telaro v Telaro,* 25 NY2d 433, 437-438). However, the doctrine has no binding force on appeal, since the appellate court is not a co-ordinate, but a higher tribunal *(Rager v McCloskey,* 305 NY 75, 78).

Moreover, there is a distinction between the law of the case and a situation arising from the acquiscence of the parties (cf. *Martin v City of Cohoes,* 37 NY2d 162, 166). As was said in Martin (p 165):

"It, therefore, has at times been a source of confusion when 'law of the case' terminology has been used in discussing nonreviewability of a point because an aggrieved party has failed to except to an adverse determination below * * * Indeed, even when no objection has been taken, our Appellate Divisions may correct errors in the exercise of their power to act 'in the interests of justice' * * * and the 'law of the case' could hardly have less to do with it.

"However, as here happened, parties to a civil litigation, in the absence of a strong countervailing public policy, may consent, formally or by their conduct, to the law to be applied".

The defendant's trial counsel did not at any time move to dismiss the indictment on the ground that the People had failed to corroborate the identity of the defendant as the perpetrator of the crime. Indeed, toward the conclusion of his summation, the defense attorney said: "[T]he question here is not the intercourse: it's not the identification. The question is whether there was force used here, as defined by law, whether a knife was here. That's the force they are alleging here, the knife." Although the court sustained the prosecutor's objection to that part of the summation, the statement is indicative of

the defendant's acquiescence that the issue of identity was not in contest.

The colloquy among counsel to the parties and the court which preceded the Judge's charge to the jury, contains additional references to the defendant's acquiescence:

"THE COURT: Do you have any other requests to charge other than what you mentioned?

"MR. PROSCIA: [Defense Counsel] No, just those two things, Judge, the corroboration and I do want you to charge also with regard to his not taking the stand, that they are not to draw any inference.

"MR. ALIAZZO: [Prosecutor] No.

"THE COURT: You said identification is not an issue; you say it is. You practically concede that he was the one who had the relations, except that it wasn't compulsion, that it wasn't by force?

"MR. PROSCIA: As a factual matter during the case; I'm saying as a matter of the trial, it's not.

"THE COURT: All right. * * *

"THE COURT: Now, if the issue was one of identification, the defendant is a person who committed the alleged crime then, of course, if they find he's not the person who committed the crime, there's no case—if he's not the person involved at all.

"But he conceded the fact that he's the person. * * *

"THE COURT: If I were going to say something about identification, I would usually do it in connection with a case where there is clearly an issue of whether or not this defendant committed the crime.

"MR. ALIAZZO: I consent, if he does, to your not mentioning identification at all tomorrow.

"MR. PROSCIA: Fine, no problem."

Hence, by his conduct at the trial, the defendant in effect agreed that identity was not a subject of controversy in the trial. " 'A controversy put out of the case by the parties is not to be put into it by us' " (People v Morhouse, 21 NY2d 66, 75; see, also, People v Robinson, 284 NY 75, 81; cf. People ex rel. Tanner v Vincent, 44 AD2d 170, 171-172, affd 36 NY2d 773). The defendant cannot now reverse his position and claim on appeal insufficient corroboration as to the issue conceded at trial. "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute

right always to conceal their cards until played" *(Williams v Florida,* 399 US 78, 82; Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth?, 1963 Wash ULQ 279, 292).

## II

### CORROBORATION OF LACK OF CONSENT

The defendant concedes that the finding of semen in the course of the complainant's medical examination constituted sufficient corroboration of the attempt to engage her in sexual intercourse. However, he argues that the record does not corroborate the lack of consent of the complainant.

We disagree. The lack of consent was corroborated by the complainant's demeanor, her timely submission to the police questioning and her physical examination. Although there was only a minor bruise on the complainant's back which was attributable to the rape, the lack of resistance was amply explained by the victim's fear of physical injury (cf. *People v Yannucci,* 283 NY 546, 547-548). The complainant was alone with the defendant in a locked room at knife-point.

Moreover, although recent outcry does not, in itself, provide the necessary corroboration (cf. *People v Page,* 162 NY 272; Richardson, Evidence [Prince, 10th ed], § 292, p 263), it is a factor to be considered by the trier of fact (cf. *People v Johnson,* 46 AD2d 55, 57). In our view, there were sufficient facts presented to the jurors, from which they could fairly decide that the complainant had not consented to the defendant's conduct.

## III

### CORROBORATION OF POSSESSION OF A WEAPON
### AND UNLAWFUL IMPRISONMENT

The defendant argues that the record does not corroborate either his possession of a weapon or unlawful imprisonment of the complainant. The short answer is that corroboration of the complainant's testimony regarding these crimes was not required under the then existing law (Penal Law, former § 130.15, subd 5).*

---

* We note that although the Trial Judge erroneously charged the jury that elements of these crimes are to be corroborated, the defendant does not argue the law of the case with regard to these crimes. We therefore find no need to pass upon the matter.

# IV

## UNLAWFUL IMPRISONMENT AS INDEPENDENT OF THE RAPE

The defendant also contends that the elements of confinement and substantial risk of serious injury necessary to a conviction of unlawful imprisonment were incidental to the alleged rape and therefore preclude his conviction of that crime. The defendant's argument is groundless. Under the law as it then existed, a defendant could not be convicted of kidnapping if the detention or asportation necessary to the kidnapping was incidental to the commission of another crime (see *People v Lombardi,* 20 NY2d 266; *People v Levy,* 15 NY2d 159, cert den 381 US 938; *People v Cassidy,* 50 AD2d 803, 804, affd 40 NY2d 763). However, this rule is not extended to the crime of unlawful imprisonment. The fact that the confinement of the complainant was incidental to the commission of the rape does not preclude a conviction on the charge of unlawful imprisonment (see *People v Ennis,* 50 AD2d 935).

# V

## THE USE OF OTHER CONVICTIONS IN CROSS-EXAMINATIONS

The defendant contends that the trial court's refusal to preclude the prosecutor from cross-examining him as to a prior conviction of attempted rape in the first degree was error. He argues that the inquiry would be prejudicial because of the similarity and nature of the crime (see *People v Sandoval,* 34 NY2d 371).

The trial court's ruling on the defendant's *Sandoval* motion was not an abuse of discretion. The use of the defendant's 1972 conviction of attempted rape in the first degree for the purpose of impeachment would have been proper. The conviction was not remote in time. Although it was similar to the crime charged, it was a crime of calculated violence which demonstrated the defendant's deliberate determination to further his own self-interest at the expense of society (see *People v Sandoval,* p 375, *supra).* We have considered the possible effect of the defendant's failure to testify by reason of the impact that the previous rape conviction would have had in impeaching his testimony, and find such effect to have been negated by the burden of proof which rests upon the prosecution, particularly where the charge is rape (see *People v Stewart,* 85 Misc 2d 385, 390; cf. *People v Poole,* 52 AD2d

1010). Initially, it lies within the Trial Judge's discretion to curtail the prosecutor's cross-examination in order to prevent any questioning designed to serve no other purpose save to show an inclination or tendency on the part of the defendant to commit the crimes for which he was on trial (cf. *People v Carmack,* 52 AD2d 264, 267). Our review of this record disclosed no abuse of that discretion.

We have considered the other claims assigned by the defendant relating to the conduct of the trial and have found them meritless.

## VI

### THE CLAIM OF IMPROPER SENTENCE

Lastly, the defendant contends that he was improperly sentenced as a second felony offender because the sentence on his prior conviction was vacated and the resentencing occurred after the commission of the instant crime. On July 5, 1972 the defendant was sentenced to three years in New York reformatory for the commission of attempted rape in the first degree. Although the sentence was vacated, because an amendment to the statute discontinued the reformatory sentence, the provision in the September 3, 1974 resentencing order, that the sentence was effective *nunc pro tunc* as of July 5, 1972, indicated that the sentencing speaks as of the earlier date. Consequenlty, the defendant had been convicted of a prior felony as of the date of the commission of the instant crime, and he was properly sentenced as a second felony offender.

For these reasons, we affirm the judgment.

DAMIANI, J. (dissenting). The defendant made a formal motion pursuant to *People v Sandoval* (34 NY2d 371) to preclude the People from cross-examining him concerning his convictions (by way of guilty pleas) of attempted rape in the first degree in 1972, and several misdemeanors in 1973 and 1974, involving nonsexual crimes.

The court denied the motion stating: "The crimes of which he has previously been found guilty are not too remote in time to warrant an order barring the People from questioning the defendant with respect to those crimes on that issue alone, but I feel that *the nature of the crime with which he is charged* and *the crimes of which he has already been found guilty or pled guilty to,* are such that in the exercise of discretion I feel

that the People should be permitted to inquire of the defendant as to those crimes, and therefore I deny the motion." (Emphasis supplied.)

The court's reasoning appeared to be that, in view of the defendant's defense of alleged consent, the fact that he had previously pleaded guilty to an attempted rape affected his credibility and tended to prove he was lying and that there in fact had been no consent in the instant case "because it goes to the question of intent."

The court stated: "If he takes the stand and says, 'I don't deny it was done but it was done with her consent', then it does affect his credibility if he previously pleaded guilty to committing rape, of the attempted rape to which he pleaded guilty because it goes to the question of intent, the credibility as to whether or not he intended to do it."

I agree with the defendant that this was a misapplication of the rule of *People v Molineux* (168 NY 264) and an abuse of discretion because of the similarity and nature of the prior felony conviction (see *People v Sandoval, supra;* cf. *People v Caviness,* 38 NY2d 227).

The Court of Appeals, in *People v Sandoval* (34 NY2d 371, 376, *supra),* set forth the following two-pronged test to determine prejudice to a defendant: "Will the testimony to be elicited in cross-examination have a disproportionate and improper impact on the trier of fact? Will the apprehension of its introduction undesirably deter the defendant from taking the stand and thereby deny the jury or court significant material evidence?"

In this case, where there is little, if any, corroboration as to (1) the lack of consent, or (2) the possession of a weapon, or (3) unlawful imprisonment, it must be said that eliciting the defendant's prior conviction of attempted rape would have had "a disproportionate and improper impact" on the jury. The prejudice to this defendant so far outweighed the probative value of such proof for impeachment purposes that it should have been excluded (see *People v Duffy,* 44 AD2d 298, affd 36 NY2d 258, remittitur amd 36 NY2d 857).

As to the second prong of the test, it is obvious that "the apprehension" of the introduction of the proof of the prior conviction "undesirably" deterred the defendant from taking the stand and thereby denied the jury "significant material evidence." The defendant, who is presently serving a 10- to 20-year sentence as a result of the largely uncorroborated testi-

mony of the complaining witness, was effectively denied an opportunity to testify as to his version of the incident and was thereby deprived of a fair trial.

Equally important is the fact that a potentially dangerous precedent is being established by the affirmance of this conviction. Citing a Trial Term decision, the majority concludes that the impact of defendant's prior conviction is "negated by the burden of proof which rests upon the prosecution, particularly where the charge is rape." The fact is that the People's burden of proof is no longer heavy, as is evidenced by the record in this case where the crime was committed in 1973. The necessity for corroboration in sex cases was further reduced in 1974 (L 1974, ch 14).

A brief review of our statutes concerning corroboration in rape cases is pertinent here. Section 2013 of the former Penal Law, and later section 130.15 of the revised Penal Law, in its original form, provided that corroboration of the victim's testimony was required to extend to every material fact essential to constitute the crime of rape (see *People v Radunovic,* 21 NY2d 186). In other words, corroboration extended to penetration, lack of consent and identification of the defendant.

In 1972 section 130.15 of the Penal Law was amended to modify the corroboration requirement in two significant ways: (1) The corroborative evidence was required to extend only to an attempt to engage in the alleged sexual conduct in order to establish the consummated crime. In other words, proof of penetration was not required. (2) The identity of the defendant as the perpetrator did not require corroboration unless lack of consent was not an element of the rape or there was an incapacity to consent (i.e., "statutory" rape). In other words, in a forcible rape situation, corroboration of the identity of the perpetrator was not required.

In 1974 section 130.15 of the Penal Law was repealed and section 130.16 was enacted. This provision represented a major step in eliminating corroboration in sex offense cases. Thus, it is no longer required that a complainant's testimony regarding the forcible rape be corroborated as to any element of the rape.

Consequently, I find little merit in the contention that the impact of the defendant's prior conviction is "negated by the burden of proof which rests upon the prosecution" in rape cases.

The situation presented in this case, where the only witnesses to the alleged rape were the complainant and the defendant, is not uncommon and will no doubt recur in the future. To permit the complainant to testify without corroboration as to any element of the alleged rape, as provided in existing statutes, and at the same time to permit cross-examination of the accused "with respect to crimes or conduct similar to that of which the defendant is presently charged may be highly prejudicial, in view of the risk * * * that the evidence will be taken as some proof of the commission of the crime charged rather than be reserved solely to the issue of credibility" *(People v Sandoval,* 34 NY2d 371, 377, *supra).* Thus, in rape cases, as in the prosecution of drug charges, interrogation as to prior convictions "may present a special risk of impermissible prejudice because of the widely accepted belief that persons previously convicted" of such offenses are likely to be habitual offenders *(People v Sandoval, supra,* pp 377-378).

Moreover, in this case, the court could have limited the People to cross-examining the defendant as to his three prior misdemeanor convictions and thereby insulated the determination of defendant's credibility from the taint of "predisposition to crime."

Accordingly, I would reverse the judgment of conviction and order a new trial.

MARTUSCELLO and COHALAN, JJ., concur with HOPKINS, Acting P. J.; DAMIANI, J., dissents and votes to reverse the judgment and order a new trial, with an opinion.

Judgment of the Supreme Court, Queens County, rendered February 21, 1975, affirmed.