OPINION OF THE COURT
Simons, J.
Defendant has been charged with raping and sexually abusing a four-year-old girl in violation of Penal Law § 130.35 (3) and § 130.65 (3). He moved to dismiss the indictment, claiming the victim was improperly permitted to testify before the Grand Jury without being sworn and that her unsworn testimony was not sufficiently corroborated to support the charges. County Court granted the motion on both grounds and dismissed the indictment. The Appellate Division affirmed, without opinion.
 The record establishes a legal basis for permitting the victim to testify without administering the oath. The critical issue is the standard of corroboration required by CPL 60.20* *104 to establish a prima facie case when proof of the charges depends upon the testimony of the unsworn victim. The statute is silent on the question and there have been substantial changes in public policy since this court last addressed it (see, People v Oyola, 6 NY2d 259). We now hold that the evidence is sufficient if the unsworn victim’s testimony is corroborated by evidence tending to establish the crime and connecting defendant with its commission.
I
The victim was four years old when she appeared before the Grand Jury. The prosecutor questioned her extensively about herself and her family. She answered the questions readily but stated she did not know the difference between telling the truth and telling a lie. Accordingly, the prosecutor permitted her to testify without being sworn. Defendant contends he erred in doing so.
CPL 60.20 provides that a child under 12 may testify without being sworn if the court is satisfied that the witness possesses sufficient intelligence and capacity to justify receiving the evidence. At the Grand Jury stage of a criminal proceeding, determinations of witness competency must be made by the District Attorney (CPL 190.30 [6]). Defendant contends, and County Court agreed, that the indictment must be dismissed because the District Attorney did not make a finding that the victim did not understand the nature of an oath or that she possessed the capacity to testify without being sworn. In our view, the record demonstrates that the District Attorney evaluated the victim’s testimonial capacity and made the necessary determinations. His decision should not be disturbed on review, therefore, in the absence of clear error (cf., People v Parks, 41 NY2d 36, 46).
At the outset of the Grand Jury proceeding the prosecutor read CPL 60.20, thereby indicating on the record that he would have to make a determination regarding the victim’s ability to give sworn or unsworn testimony, and advising the *105 jury that corroboration was necessary for unsworn testimony. He then conducted voir dire of her to assess her testimonial capacity. His preliminary examination revealed that she could accurately perceive objective conditions, such as the weather outside, she knew her full name, her age, the community where she lived, her mother and father’s names and that her mother was expecting another child. She stated that she did not go to school but she did go to church. When the victim indicated she did not know the difference between telling the truth and lying, however, the District Attorney ruled on the record that she could not be sworn but proceeded to question her about the crime and defendant’s part in it.
Because the prosecutor stated on the record that he would have to determine whether the victim was sufficiently intelligent to give unsworn testimony, conducted voir dire which revealed that she had the capacity to perceive and recall events, and only questioned her after explicitly stating his finding that the oath could not be administered to her, the record, by clear implication, establishes the District Attorney complied with CPL 60.20. That he did not expressly state his findings on the record does not require dismissal of the indictment because it is apparent that he made the requisite determinations (cf., People v Johnson, 185 NY 219, 228 [court presumed to have determined infant’s capacity to testify despite silence of record on the issue]).
II
The evidence before the Grand Jury established that defendant is a relative of the victim. On the date in question, he lived with his parents and was approximately 26 years old. The victim testified before the Grand Jury that on the night of the crime she and her parents attended a family picnic at the home of defendant’s parents where they had a campfire and a cookout. Defendant was there and after dark he took her into the woods behind the house. She then testified, and demonstrated with anatomically correct dolls, how defendant removed her pants and his own, laid on the ground and pulled her down on top of him, and had sexual intercourse with her. She testified that she cried when defendant put his penis between her legs because "it hurt” and defendant then stopped. After they put their clothes back on, defendant told her not to tell anyone what happened. She also stated that burdocks stuck to her while she was in the woods.
*106 The girl’s parents also testified before the Grand Jury. Her mother stated that 9 or 10 people attended the family gathering and that she was inside the house with several others watching television at the time defendant allegedly took her daughter into the woods. She assumed her daughter was safe because "everyone else [was] around.” The victim’s father testified that at dusk on the evening of the gathering, he was playing horseshoes on the front lawn at the grandparents’ house with a man named "Buddy”. He recalled his daughter disappearing for approximately 15 minutes but thought nothing of it at the time because he assumed she had gone inside to go to the bathroom. Defendant was also absent during this time. After about 15 minutes the victim reappeared from the back of the house. She was crying and asked her father to remove burdocks from her hair.
The victim said nothing about the incident that night but her mother testified that after the picnic her daughter’s personality changed and she became withdrawn. She also observed her daughter crying when urinating and noticed a "very bad redness” in her vaginal area. Because the victim’s mother had to work, her grandfather first took the victim to a doctor to check the rash. The doctor prescribed medication. When the victim returned for a follow-up visit with her mother, the doctor informed the mother that he suspected her child had been sexually abused. That evening the mother asked her daughter if anyone had touched her "down there” and the victim reluctantly indicated that defendant had after he took her into the woods on the night of the picnic.
The victim’s doctor testified that on the girl’s first visit he observed a vaginal rash and became concerned that she might have been abused because, despite the lack of infection, she experienced pain when urinating. During this first visit he conducted a cursory examination, and as a result, believed her hymen had been ruptured. When she returned for the followup visit he and a gynecologist conducted a more thorough examination and discovered that her hymen was still intact. The doctor testified the existence of a hymen was not conclusive, however, and that the irritation could have been caused by partial penetration. He referred the family to the child abuse authorities.
¡II
The Criminal Procedure Law provides that a Grand Jury *107 may indict when the evidence before it is legally sufficient, that is, if the evidence establishes all the elements of the crime, and establishes reasonable cause to believe defendant committed the crime (CPL 190.60). The first half of the test refers to the quantum of evidence; the second to the "degree of certitude” required (People v Jennings, 69 NY2d 103, 115). The statute also provides that there shall not be legally sufficient evidence of the crime before the Grand Jury when corroboration is lacking if corroboration is required for conviction. Clearly, CPL 60.20 requires corroboration of the testimony of unsworn witnesses and the question before us is how much.
Although the trier of fact generally is responsible for determining the credibility of witnesses, because the law views some witnesses with skepticism it requires corroboration of their testimony as a matter of fairness to the defendant. The requirement reflects public policy considerations and the quantum of corroboration necessary varies from onerous to minimal depending on the purpose of the applicable corroboration rule. The most stringent corroboration standard in the Nation was found in former section 130.15 of the Penal Law, now repealed, which required that the victim’s testimony in certain sex offenses be corroborated as to every material element of the crime (see generally, People v Fuller, 50 NY2d 628, 635; People v Daniels, 37 NY2d 624, 628; People v Friedman, 139 App Div 795, 796; Note, Corroborating Charges of Rape, 67 Colum L Rev 1137, 1138-1139). The requirement reflected a distrust of female complainants. At the other end of the spectrum is the minimal corroboration mandate set forth in CPL 60.50, which requires the corroboration of a defendant’s confession by evidence, of whatever weight, tending to establish the crime was committed. "Its purpose is to avoid the possibility that a crime may be confessed when, in fact, [none] has been committed” (People v Booden, 69 NY2d 185, 187; see also, People v Lipsky, 57 NY2d 560, 570). The accomplice standard set forth in CPL 60.22 is somewhere between these extremes and requires only that accomplice testimony be supported by evidence tending to link the accused to the crime. It rests on the recognition that such testimony is suspect because accomplices generally are persons of disrepute, often motivated by a desire to curry favor with the authorities (People v Daniels, supra, at 629). A similar intermediate standard is prescribed by Penal Law § 130.16 which requires corroboration for those sex offenses in *108 which lack of consent is an element where the victim lacks mental capacity. Its requirement is satisfied when the victim’s testimony is supported by evidence tending to establish a crime was committed and that the defendant committed it (see generally, People v Fuller, 50 NY2d 628, 635, supra).
The purpose of requiring corroboration of unsworn testimony, of course, is to ensure its trustworthiness. A witness incapable of comprehending the oath may not understand the importance of truthfulness in criminal proceedings or the impact false testimony could have on the accused. Thus, the law requires that before unsworn statements can support a conviction they must be corroborated to elevate their trustworthiness to the level associated with sworn testimony (see generally, People v Howard, 122 AD2d 811; People v Brewer, 94 AD2d 812; People v St. John, 74 AD2d 85, appeal dismissed 53 NY2d 704).
Defendant contends that we established the standard for corroborating unsworn testimony in People v Oyola (6 NY2d 259, 262, supra; see also, People v Porcaro, 6 NY2d 248). In that case, the defendant was convicted of impairing the morals of a minor. We held the evidence was insufficient and thus reversed the conviction. Because the victim in Oyóla testified under oath, there was no need for the court to consider the standard of corroboration for unsworn testimony. Nevertheless, the plurality opinion stated in dictum that unsworn testimony must be strictly corroborated by evidence extending to every material element of the charged crime. The court reached that conclusion by applying to unsworn testimony the stringent sex offense corroboration rule required by the former Penal Law, a requirement which has now been repealed. The consequence of the ruling, which was not required by the language of the unsworn testimony statute, was to require greater corroboration for sex cases involving unsworn witnesses than that required in nonsex cases involving similar witnesses.
The Oyóla decision, and the corroboration rule it applied, rested on policy considerations expressed in the penal statutes of the time which insisted on clear proof of sexual misconduct because of general skepticism about accusations of misconduct which were easily made but difficult to disprove. Since the Oyóla decision in 1959, however, there has been a substantial shift in the public policy of this State. The detection and prosecution of sex offenses in general, and of sexual abuse of *109 children in particular, has become a major public concern (see, Matter of Nicole V., 71 NY2d 112 [decided herewith]). As a result, the requirement for corroboration in sex crimes was largely abandoned when Penal Law § 130.15 was repealed in 1974 (L 1974, ch 14, § 1) and the remaining requirement for corroboration of sex offenses with respect to child victims was eliminated in 1984 (L 1984, ch 89). These changes were made in the belief that defendants are sufficiently protected from false charges by other safeguards and that in child abuse cases the difficulty of obtaining corroborative evidence, the need to protect child victims and the unfairness of treating those victims differently from victims of crime in general, warranted repeal of the statute (see, Governor’s Mem approving L 1984, ch 89, 1984 NY Legis Ann, at 73; see also, Governor’s Mem approving L 1974, ch 14, 1974 NY Legis Ann, at 371-372). Indeed, some have urged that all corroboration requirements for sex offenses should be removed (see, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 130.16; see also, Ludwig, The Case for Repeal of the Sex Corroboration Requirement in New York, 36 Brooklyn L Rev 378 [1970]). Thus, whatever justification in public policy there may have been for the Oyóla dictum at the time it was stated has been destroyed by repeal of the statutes on which it was founded.
Because New York is one of the few States, indeed it may be the only State which allows unsworn testimony and allows it only in criminal proceedings (see, Commentary, Proposed New York Code of Evidence § 603, at 114 [1980]), there appears to be no judicial authority which recognizes a standard of corroboration for unsworn testimony in nonsex offenses. Nevertheless, the perceived rule has been that if the charges do not pertain to sexual misconduct, the corroborative evidence is legally sufficient if it tends to establish the crime and that defendant committed it (see, Pitler, New York Criminal Practice Under the CPL § 12.6 [1972]; Pitler, "Existentialism” and Corroboration of Sex Crimes in New York: A New Attempt to Limit "If Someone Didn’t See it, it Didn’t Happen”, 24 Syracuse L Rev 1, 31 [1972]). We conclude that this is the appropriate corroboration standard for all cases where unsworn testimony is received. Such a rule not only makes the corroboration standard under CPL 60.20 uniform, regardless of the subject matter of the prosecution, but it also serves to harmonize the statute with the corroboration standard found in Penal Law § 130.16, which applies to victims suffering a *110 mental defect, who similarly may not appreciate the gravity of their testimony. Indeed, CPL 60.20 specifically refers to children under 12 and those suffering from mental disease or defect and permits both to give unsworn testimony. Section 130.16 provides that testimony in certain sex offense cases by persons lacking mental capacity must be corroborated by evidence tending to establish that the charged crime was committed and that the defendant was the perpetrator. That standard is appropriate for all unsworn witnesses. It satisfies the fairness concerns underlying corroboration requirements generally and comports with the current public policy of the State.
IV
Applying this rule to the indictment before us, the victim’s unsworn testimony was sufficiently corroborated.
First, there was independent evidence tending to show that the crimes of rape and sexual abuse were committed. It established that the victim left a party of relatives to go into the woods after dark and that she returned crying after about 15 minutes. After the picnic her personality changed and she became withdrawn, she developed a vaginal rash and experienced pain when urinating. Her physician could find no evidence of infection or other cause for the discomfort and, suspecting child abuse, referred her parents to the child abuse authorities. He originally believed the child’s hymen had been ruptured. Subsequent examination revealed it intact, but the doctor testified that partial penetration could occur without a rupture and could explain her physical problems.
Second, there was evidence tending to connect defendant to the crime. As with accomplice testimony, "[a]ll that is necessary is to connect the defendant with the crime in such a way that the jury may be reasonably satisfied that the [witness] is telling the truth” (People v Daniels, 37 NY2d 624, 630, supra; People v Malizia, 4 NY2d 22, 27). "[M]atters which in themselves may be of seeming indifference may be 'so harmonized " 'with the [witness’] narrative as to have a tendency to furnish the necessary connection between the defendant and the crime’ ” ’ ” (People v Smith, 55 NY2d 945, 946). Thus, under certain circumstances, we have held that opportunity to commit the crime can suffice to establish identity (see, People v Masse, 5 NY2d 217).
The evidence before the Grand Jury established that the *111 crime took place at the family gathering. There were only 8 or 9 people present, including the victim and a one-year-old infant. The group also included the victim’s parents and her grandparents and the victim’s father testified he was playing horseshoes with a man named "Buddy” at the time his daughter disappeared. Thus, there were at most 1 or 2 men, including defendant, who could have victimized the girl and there was testimony that defendant was not seen during the 15 minutes she was gone. When the victim reappeared, she came from behind the house, was covered with burdocks — thus supporting her claim that she had been in the woods — and was crying. Under these circumstances, the evidence of defendant’s opportunity sufficiently "harmonizes” with the child’s unsworn testimony and tends to identify him as the perpetrator, thereby supplying sufficient corroboration of identity pursuant to CPL 60.20.
Accordingly, the order of the Appellate Division should be reversed and the indictment reinstated.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

 CPL 60.20 provides:
"1. Any person may be a witness in a criminal proceeding unless the court finds that, by reason of infancy or mental disease or defect, he does not possess sufficient intelligence or capacity to justify the reception of his evidence.
"2. Every witness more than twelve years old may testify only under oath unless the court is satisfied that such witness cannot, as a result of mental disease or defect, understand the nature of an oath. A child less than twelve years old may not testify under oath unless the court is satisfied that he *104 understands the nature of an oath. If the court is not so satisfied, such child or such witness over twelve years old who cannot, as a result of mental disease or defect, understand the nature of an oath, may nevertheless be permitted to give unsworn evidence if the court is satisfied that the witness possesses sufficient intelligence and capacity to justify the reception thereof.
"3. A defendant may not be convicted of an offense solely upon unsworn evidence given pursuant to subdivision two.”