◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY STICHT, Appellant. [641 NYS2d 146] —Mercure, J. Appeal from a judgment of the County Court of Saratoga County (Estes, J.), rendered November 14, 1994, convicting defendant upon his plea of guilty of the crime of murder in the second degree.

This appeal follows defendant's negotiated plea of guilty to murder in the second degree and sentence to an indeterminate prison term of 20 years to life as the result of the February 9, 1994 stabbing murder of Marjory Kinnicutt in the Town of Greenfield, Saratoga County. The primary contention advanced by defendant is that the two written confessions he gave to State Police Investigators on December 14, 1994 and physical evidence obtained as a result thereof should have been suppressed as the product of improper police conduct. Specifically, the claim is that during the questioning leading up to his confession, the police concealed defendant's location from his mother and that, as an 18-year-old mentally retarded special education student, defendant was surely unaware of his need for adult assistance, the net effect being that defendant was effectively precluded from seeking or obtaining legal advice prior to submitting to police questioning. We disagree with defendant's analysis, both factually and legally.

The relevant evidence adduced at the suppression hearing showed that on February 14, 1994, State Police Investigators John Duff and Michael Huskie were assigned the task of questioning defendant concerning allegations that he may have been seen driving the victim's car during the period between the victim's death and the discovery of her body. Duff and Huskie located defendant at his sister's residence and advised those present, including defendant's mother, sister and brother-in-law, that they wanted to speak with defendant about the matter. Defendant's mother encouraged defendant to cooperate and he voluntarily left with the investigators, who indicated an intent to conduct the interview at the command post that had been established at the firehouse in the Town of Greenfield. However, when the investigators radioed the command post to advise that they were en route with defendant, they were told to proceed instead to the Troop G headquarters in Loudonville (apparently because of the lack of appropriate interview facilities at the command post).

Duff, Huskie and defendant arrived at Troop G headquarters at approximately 6:25 P.M., and defendant was given the *Miranda* warnings at 6:35 P.M. Over the course of the following $5^1/2$ to 6 hours, defendant gave two written statements, ultimately confessing to the Kinnicutt murder. According to Duff and Huskie, before signing the statements defendant read aloud the entire first statement and the first page of the second statement and was able to do so without any difficulty or hesitation. Although the evidence establishes that, after defendant left his mother, she decided she wanted to be with him and

thereafter made several unsuccessful efforts to locate defendant while he was in custody, it is also undisputed that defendant's mother made no effort to contact an attorney and that defendant expressed no desire for his mother or any other person to be present with him during the questioning (*see, People v Pica*, 159 AD2d 524, 525, *lv denied* 76 NY2d 794).

Unlike the facts underlying *People v Bevilacqua* (45 NY2d 508) and *People v Townsend* (33 NY2d 37), in this case there is no evidence of police trickery or deception or any effort to impermissibly isolate defendant from his mother (*see, People v Salaam*, 83 NY2d 51, 55-56; *People v Fuschino*, 59 NY2d 91, 100; *People v Casassa*, 49 NY2d 668, 681-682, *cert denied* 449 US 842; *People v Price*, 193 AD2d 820, 821), and it is well settled that the police have no obligation to let family members or friends communicate with a competent adult while he or she is in custody (*see, People v Crimmins*, 64 NY2d 1072; *People v Washington*, 209 AD2d 817, 819, *lv denied* 85 NY2d 944). We note that, notwithstanding his mother's conclusory statement that defendant "is classified as mentally retarded", the record provides abundant support for County Court's finding that defendant was legally competent and able to comprehend and knowingly waive his *Miranda* rights. It should also be noted that defendant's school records, which were offered at the hearing by defendant, received in evidence and considered by County Court in its determination, have not been included in the record on appeal.

Defendant's challenge to the sufficiency of his plea allocution may not be raised for the first time on appeal (*see, People v Lopez*, 71 NY2d 662, 664-665), and his remaining contentions have been considered and found unavailing.

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is affirmed.