(August 26, 1996)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK W. DEARSTYNE, JR., Appellant. [646 NYS2d 1000] —White,

J. Appeal from a judgment of the County Court of Rensselaer County (Dwyer, Jr., J.), rendered August 14, 1991, upon a verdict convicting defendant of the crimes of attempted rape in the first degree, aggravated sexual abuse in the first degree and endangering the welfare of a child (two counts).

Defendant, then 16 years old, was arrested on June 19, 1987 and charged with the crime of rape in the first degree, allegedly perpetrated against a three-year-old child (hereinafter victim A). A 10-count indictment was returned on November 18, 1987 alleging that defendant committed various sex-related offenses against victim A and two other very young children (hereinafter referred to as victim B and victim C). This indictment was dismissed on May 4, 1990 on the ground that the People failed to comply with CPL 190.32 (6). Defendant was reindicted on May 18, 1990 and, following the denial of his motions to suppress an inculpatory written statement and to dismiss the indictment on speedy trial grounds, a trial ensued on July 9, 1991 that culminated in a verdict finding defendant guilty of several crimes perpetrated against victims A and B and not guilty on the counts of the indictment pertaining to victim C. Defendant was denied youthful offender treatment and sentenced to a term of imprisonment of 4 to 12 years for his conviction of the crime of attempted rape in the first degree, a consecutive sentence of 6 to 18 years for the conviction of the crime of aggravated sexual abuse in the first degree and concurrent sentences of one year for the conviction of two counts of the crime of endangering the welfare of a child. Defendant appeals.

When this appeal was previously before us (215 AD2d 864), we withheld our decision and remitted the matter to County Court (McGrath, J.) so that it could hold an evidentiary hearing and reconsider defendant's motion to dismiss the indictment on speedy trial grounds. County Court, in a comprehensive decision, concluded that defendant's statutory and constitutional speedy trial rights had not been abridged. We shall first consider the propriety of this ruling.

CPL 30.30 (1) (a) requires dismissal of a felony indictment where the People are not ready for trial within six months of the commencement of a criminal action. Compliance with this statute is generally determined by computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods of delay that are excludable under the statute and then adding to the result any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion

(see, People v Cortes, 80 NY2d 201, 208). Where, as in this case, there is a succeeding indictment returned after the original one has been dismissed, the succeeding indictment relates back to the original accusatory instrument for the purpose of applying the six-month readiness period and computing excludable time (see, People v Sinistaj, 67 NY2d 236, 239). However, where, as here, the felony complaint and subsequently filed indictment allege separate and distinct criminal transactions, the speedy trial time clock commences to run upon the filing of the indictment with respect to the new charges therein (see, People v Schaffer, 200 AD2d 695, lvs denied 83 NY2d 810, 858).

Applying these rules here with regard to victim A, the speedy trial time clock began to run on June 19, 1987, and with regard to the new charges in the indictment involving victim B, it began on November 18, 1987. When the People announced their readiness for trial at defendant's arraignment on November 24, 1987, the time elapsed from the aforementioned dates was 158 days and six days, respectively. With respect to the 158-day period, we agree with County Court that the 10-day period the court awaited the results of a competency examination and the 66-day period during which plea negotiations were being carried out with the consent of defendant's counsel are excludable, leaving an 82-day period of prereadiness delay chargeable to the People relative to the charges against victim A contained in the original felony complaint (see, People v Rodriguez, 212 AD2d 368, 369, lv denied 85 NY2d 913; People v Lebron, 211 AD2d 208, 209, affd 88 NY2d 891; see also, CPL 30.30 [4] [a]). Regarding victim B, there is no time excludable from the six-day period. Thus, since the People's prereadiness delay did not exceed the statutory six-month period, the issue of whether defendant's statutory right to a speedy trial was violated turns on whether any postreadiness delay is chargeable to the People.

Initially, we determine that the 19-day period from the dismissal of the original indictment on May 4, 1990 to the date of defendant's arraignment on the succeeding indictment (May 24, 1990), where the People reiterated their readiness for trial, is chargeable to the People as postreadiness delay (see, People v Cortes, supra, at 211).

The next area of postreadiness delay concerns the People's production of the Grand Jury minutes for County Court's inspection. With respect to the original indictment, it is agreed that the People were obligated to produce the minutes within a reasonable time measured from January 15, 1988 (see, People v Harris, 82 NY2d 409, 413). The record shows that the

minutes, exclusive of the videotaped testimony of victims B and C that was presented to the Grand Jury, were delivered to County Court 54 days later on March 9, 1988. Given the proof showing that, during the winter of 1987 and 1988, the Grand Jury stenographer's heavy workload resulted in a backlog, we have no quarrel with County Court's finding that 50 days was a reasonable time for the People to produce the Grand Jury minutes. This leaves four days of postreadiness delay chargeable to the People.

Defendant claims that a further postreadiness delay of 27 months should be chargeable to the People because the videotaped testimony of victims B and C was never transcribed and transmitted to County Court. We reject this argument. The People's undisputed failure to comply with CPL 190.32 (6)* does not mandate a finding that the People only partially delivered the Grand Jury minutes. The record establishes that County Court was aware of the existence of these videotapes on March 9, 1988 and that they were being retained by the District Attorney. Significantly, at any time thereafter, in accordance with the common practice prevailing in County Court, these tapes, the functional equivalent of live Grand Jury testimony (see, People v Sayavong, 83 NY2d 702, 706), were available for review by the court. The fact that County Court elected not to avail itself of this opportunity cannot be charged to the People since CPL 30.30 addresses prosecutorial readiness, not court readiness (see, People v Goss, 87 NY2d 792, 797; People v Brown, 195 AD2d 310, 311, lv denied 82 NY2d 891). Insofar as the second indictment is concerned, we find that the People are chargeable with 13 days of postreadiness delay arising from their delay in producing the Grand Jury minutes following defendant's unopposed motion to inspect (see, People v Harris, 82 NY2d 409, 413, supra).

When these periods of delay are tabulated, the People are chargeable with 118 days of delay relative to the charges involving victim A emanating from the felony complaint and 42 days with respect to the charges pertaining to victim B that were first asserted in the original indictment. Having established that the period of delay did not exceed six months, County Court's denial of defendant's statutory speedy trial motion was proper.

Defendant further contends that his constitutional speedy trial rights were abridged. The United States Supreme Court

---

* CPL 190.32 (6) reads: "When the videotape is introduced in evidence and played in the grand jury, the grand jury stenographer shall record the examination in the same manner as if the witness had testified in person."

has qualified the 6th Amendment's broad guarantee of a speedy trial by specifically recognizing the relevance of four separate factors: whether the delay before trial was uncommonly long, whether the government or the defendant is more to blame for that delay, whether, in due course, the defendant asserted his or her right to a speedy trial, and whether he or she suffered prejudice on account of the delay (*Doggett v United States*, 505 US 647). To trigger a speedy trial analysis, a defendant must allege that the interval between accusation and trial crossed the threshold dividing ordinary delay from " 'presumptively prejudicial' " delay (*supra,* at 650; *see, Barker v Wingo*, 407 US 514, 530-531). Inasmuch as the 49-month delay here is presumptively prejudicial (*see, Cameron v LeFevre*, 887 F Supp 425, 430), we shall proceed to examine the other factors.

The second factor—the reason for the delay—appears to be attributable to County Court's inattentiveness to this matter despite the People's repeated requests to set it down for trial. With respect to the third factor, the record shows that defendant did not assert his right to a speedy trial until April 1990. We note that the failure to assert this right will make it difficult for a defendant to prove that he was denied a speedy trial (*see, Barker v Wingo, supra,* at 531). Defendant's failure to show actual prejudice does not negate his claim, since the United States Supreme Court has eschewed such a requirement; instead, it has recognized that excessive delay is presumptively prejudicial (*see, Doggett v United States, supra,* at 656). Such prejudice, however, standing alone cannot carry a speedy trial claim (*see, supra*).

Here, the presumption has been diminished by the fact that defendant acquiesced to a good portion of the delay by not asserting his right to a speedy trial until almost three years after his arrest, thereby signifying that he did not consider the deprivation of his right to be serious (*see, Barker v Wingo, supra,* at 531). Taking this into account, along with the fact that the delay cannot be attributed to the bad faith or negligence of the People, we conclude that defendant's constitutional right to a speedy trial was not abridged. By this finding we do not condone the delay herein which needlessly compounded the anxiety of the victims and their parents and gave voice to the perception that the criminal justice system marginalizes victims' rights.

Defendant next argues that his inculpatory statement should have been suppressed because the police deliberately isolated him from his parents. The evidence shows that on June 18, 1987, victim A identified defendant as her attacker. The next

day City of Rensselaer Police Officer Francis Petrucci and State Trooper Patricia Donovan went to defendant's residence where they encountered his mother. Petrucci asked if defendant was home as he wanted to speak to him regarding an investigation he was conducting. He did not, however, specify the subject of the investigation. In any event, defendant's mother, voicing no objection to the police questioning her son, informed Petrucci that he was not at home but was at a neighbor's house. The police went to that location where they found defendant, who agreed to talk to them and willingly accompanied them to the State Police Troop G Headquarters in Loudonville, Albany County. There, at about 2:30 P.M., defendant was introduced to Investigator Edward Girtler who took him to an interview room and administered the *Miranda* warnings. Defendant indicated that he understood them and did not wish to invoke them. Girtler then engaged defendant in a generalized conversation that ultimately resulted in an inculpatory statement that was reduced to writing at around 4:40 P.M. At that point defendant was arrested and, later that evening, was arraigned in Rensselaer City Court.

In the meantime, after the police left, defendant's mother called his father. He arrived home about 2:15 P.M. and called the Rensselaer Police Station to inquire about his son's whereabouts. They said they had no idea where he was and suggested that defendant's father call the State Police in Loudonville. He did so only to be told there was no record of his son being there. He continued calling various police agencies, not receiving a response until 4:45 P.M. when Petrucci called to tell him defendant was in Loudonville.

In our view, these facts do not warrant suppression of defendant's statement for they do not establish that his isolation resulted from official deception or trickery (*see, People v Salaam*, 83 NY2d 51, 55). First, we note that, because defendant was legally an adult, there was no requirement that his family be present during the police questioning (*see, People v Page*, 225 AD2d 831, 833, *lv denied* 88 NY2d 883). Moreover, the police had obtained the consent of defendant's mother to speak to him and there is no indication that his father made any effort to contact an attorney to represent him (*see, People v Fuschino*, 59 NY2d 91, 100; *People v Sticht*, 226 AD2d 838, 840; *People v Price*, 193 AD2d 820, 821).

Defendant secondarily argues that his statement should be suppressed because it was obtained during an impermissible delay in his arraignment. We reject this argument as it finds no support in the record (*see, People v Ortlieb*, 84 NY2d 989,

990; *People v Jackson*, 178 AD2d 851, 852, *lv denied* 79 NY2d 1002).

Turning to other issues, victim B gave unsworn testimony relating to the crimes of aggravated sexual abuse in the first degree and endangering the welfare of a child. Defendant contends that this evidence was not sufficiently corroborated as required by CPL 60.20 (3). We disagree. Viewing the testimony of victim B's mother, the applicable medical record and defendant's statement in a light most favorable to the People (*see, People v Tomczak*, 189 AD2d 926, 927, *lv denied* 81 NY2d 977), we find that this evidence sufficiently corroborated victim B's testimony since it established that defendant had the opportunity to commit the crimes and that these crimes were committed (*see, People v Groff*, 71 NY2d 101, 109-111).

Defendant's other contentions do not require extended discussion. There was no violation of the *Brady* rule because the claimed *Brady* material was not exculpatory (*see, People v Baxley*, 84 NY2d 208, 213; *People v Steadman*, 82 NY2d 1, 7). The allegedly improper statement made by the prosecutor during summation did not deprive defendant of a fair trial because County Court gave prompt curative instructions which defendant accepted (*see, People v Davis*, 208 AD2d 1062, 1063, *lv denied* 84 NY2d 1010; *People v Cook*, 186 AD2d 879, 881, *lv denied* 81 NY2d 761).

Lastly, considering the heinous nature of the crimes committed against defenseless two- and three-year-old children and defendant's prior history of pedophilia, we see no reason to disturb County Court's decision to deny defendant youthful offender treatment and the sentences it imposed upon him (*see, People v Brown*, 225 AD2d 904-905, *lv denied* 88 NY2d 876; *People v Duff*, 216 AD2d 689, 690; *People v Vredenburg*, 200 AD2d 797, 799, *lv denied* 83 NY2d 859).

Cardona, P. J., Mercure, Casey and Spain, JJ., concur. Ordered that the judgment is affirmed.