(January 7, 1999)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JUAN CORDERO, Respondent. [684 NYS2d 192] —Order, Supreme Court, New York County (Patricia Williams, J.), entered on or about October 7, 1996, which granted defendant's motion for a trial order of dismissal, unanimously reversed, on the law, the motion denied, the jury verdict finding defendant guilty of sodomy in the first degree, sexual abuse in the first degree and endangering the welfare of a child, reinstated, and the matter remanded for sentencing.

A jury found defendant guilty of anally sodomizing the complainant, his six-year old nephew. The trial evidence established that the complainant stayed at the apartment of his uncle on the night of November 11, 1995, with no one else

present. The complainant woke up in the middle of the night because of a nightmare and asked defendant if he could sleep in his bed. Defendant agreed. Later, defendant removed the complainant's clothes and sodomized him. Defendant stopped in the middle of the assault to lubricate his penis with cooking oil he obtained from a kitchen cabinet.

The next day defendant brought the complainant with him to Brooklyn, and then brought him home. That evening, the complainant reported the incident to his two brothers and mother. The next day, the complainant's mother confronted defendant, who denied the accusation. Ultimately, child welfare officials and the police were alerted, and defendant was arrested. Defendant's statement to the police confirmed the complainant's account of what occurred on November 11-12, except for the sexual assault.

At the close of the prosecution's case, and again after the entire case, defense counsel moved pursuant to CPL 290.10 (1) for a trial order of dismissal. Counsel alleged that the trial evidence was legally insufficient because the complainant's unsworn testimony was not adequately corroborated. The prosecution opposed, arguing that the necessary corroboration was supplied by defendant's statement to the police, evidence of the complainant's changed demeanor after the incident, the complainant's prompt outcries to his brothers and mother, and the recovery by the police of the container of oil used during the attack. The court reserved decision until after the guilty verdict was rendered, but then granted the motion. The court subsequently filed a written opinion rejecting the People's arguments concerning the adequacy of the corroboration of complainant's unsworn testimony.

The People argue on this appeal that the trial court erred in refusing to allow the complainant to give sworn testimony. They further contend that even if the court's competence determination was correct, the court committed independent error in granting the motion to dismiss since the complainant's unsworn testimony was sufficiently corroborated by other evidence adduced by the People. As we agree with both of these arguments, we reverse and reinstate the jury's verdict.

"A child less than twelve years old may not testify under oath unless the court is satisfied that he understands the nature of an oath." (CPL 60.20 [2].) To overcome the rebuttable presumption of incompetence, the infant must demonstrate sufficient intelligence and capacity to justify reception of his testimony (*People v Nisoff*, 36 NY2d 560, 566), and have " 'some conception' " of the obligations of an oath and the consequences

of giving false testimony (*People v Parks*, 41 NY2d 36, 46). In light of the trial court's unique opportunity to participate in the inquiry of the witness, and to observe the witness's maturity and demeanor, the determination of whether the witness is competent to be sworn lies primarily with the trial court, and should not be disturbed unless clearly erroneous (*People v Parks, supra*, at 46; *People v Nisoff, supra*, at 566; *see also*, *Wheeler v United States*, 159 US 523, 524-525). In making this determination, the court should consider "the capacity and intelligence of the child, his appreciation of the difference between truth and falsehood, as well as his duty to tell the former" (*Wheeler v United States, supra*, at 524).

Prior to opening statements, the court examined the complainant outside the presence of the jury to determine if he could give sworn testimony. In response to the court's preliminary questions, the complainant told the court his name (spelling his last name), stated that he was seven years old and said that his birthday was April 13th. He further stated that he was in the second grade and gave his teacher's name. He identified the room he was in as a "courtroom" and the Trial Justice as a "Judge". The court asked the complainant why he was in court, and complainant responded "to talk about something". When the court asked "[w]hat is important when you talk to me about those things?" complainant responded "To tell the truth". The court then instructed him to tell a lie, and complainant responded "Like if I said your coat is green and it is not." Then, pointing to a court officer, the court asked whether it was the truth or a lie that the man was an "astronaut", and the complainant responded "a lie." The court asked whether he was "sure", explaining that although the man definitely didn't look like an astronaut, "sometimes it is tricky about truth and lies * * * sometimes you don't know, right?" The complainant responded affirmatively.

The court's examination continued. The following questions and answers were cited by the court as a basis for its ruling:

"COURT: What happens if * * * somebody asked you a question, right, like I did about the [astronaut], and you don't know the answer, what do you have to do?

"WITNESS: I don't know, say the truth.

"COURT: You have to tell me that you don't know. Can you do that?

"WITNESS: Um-hum.

"COURT: Are you sure? What happens if you tell a lie?

"WITNESS: Then that means that you lie * * *

"COURT: What happens? What is going to happen if you tell something that is not true?

"WITNESS: I don't know.

"COURT: Is it a good thing to tell a lie or a good thing to tell the truth?

"WITNESS: It is a good thing to tell the truth."

The court then asked the attorneys for each side whether they had any further questions, and both declined. The court announced its ruling that it would not permit the complainant to be sworn, but would, pursuant to CPL 60.20 (2), allow him to give unsworn testimony. The court ruled that the complainant did not sufficiently understand the nature of an oath or the consequences of giving false testimony, as evidenced in part by the fact that "the family is not a churchgoing family so there is not a moral underpinning from some religious basis." The court also stated its concern about the complainant's ability to say that he did not know something, if, in fact, he did not.

Based on our careful review of the voir dire examination of the complainant, we conclude that the court's competence determination constituted an improvident exercise of discretion. The record clearly shows that the complainant possessed sufficient intelligence and capacity to be sworn as a witness (*People v Nisoff, supra*). He demonstrated his familiarity with his own personal circumstances and the purpose of his visit to the courtroom. Further, he expressed a keen understanding of the distinction between telling the truth and lying, and that telling the truth was a "good thing" (*see, People v Young*, 225 AD2d 339, *lv denied* 88 NY2d 971; *People v Shavers*, 205 AD2d 395, *lv denied* 84 NY2d 939; *see also, People v Torres*, 253 AD2d 502). Indeed, complainant's statement that it was "important" to tell the truth when he was "talking" in court reflected an appreciation and recognition of the moral obligation to testify truthfully.

The court's ruling that the witness did not appreciate the nature of an oath or the consequences of testifying falsely is not supported by the voir dire record. The witness was never asked about an oath, or even whether he could keep a "promise" to tell the truth. Rather, some of the court's questions were confusing. Other questions were open-ended, such as "What happens if you tell a lie?" This might elicit a variety of responses from a group of adults, let alone a seven-year old child. While it appears that the court was trying to determine whether the child understood the concept of punishment, "the law does not require that children define abstract concepts with the sophistication of an adult" (*People v Mercado*, 157

AD2d 457, *lv denied* 75 NY2d 922; *see also, People v Cintron,* 214 AD2d 349, *lv denied* 86 NY2d 733). Given the child's demonstrated level of understanding, we have no doubt that more specific and concrete inquiries would have yielded an express recognition of the obligation to tell the truth, and the consequences of not doing so. However, the court declined the prosecutor's request to reopen the inquiry.

Were we to agree that the complainant was not competent to be sworn, we would nevertheless reverse on the ground that the People produced sufficient independent evidence corroborating the complainant's unsworn testimony.* Under CPL 60.20 (3), a defendant may not be convicted of an offense solely upon the unsworn testimony of a complaining witness. Rather, the unsworn witness's testimony must be corroborated by "evidence tending to establish the crime and connecting defendant with its commission." (*People v Groff*, 71 NY2d 101, 104.)

Here, there was independent evidence tending to establish that the complainant was sexually assaulted. The complainant's mother and brothers testified that complainant's behavior noticeably changed immediately after the incident (*see, People v Groff, supra; People v Badia*, 163 AD2d 4, 6; *see also, People v Morse*, 177 AD2d 1015, *lv denied* 79 NY2d 861). When he first returned home, he was quiet and withdrawn, and went immediately to watch television. Despite his previously close relationship with his uncle, the complainant would not come out of his room when defendant visited after the incident, except when defendant offered him money. In the absence of any other explanation for this sudden rift between defendant and the complainant, the latter's changed behavior constitutes corroborative evidence.

The People also argued that the complainant's prompt outcries to his brothers and mother were further corroboration that a crime occurred. The trial court, citing this Court's decision in *People v Badia* (*supra*), ruled that such evidence failed to possess the requisite independence since it was merely a repetition of the complainant's unsworn testimony. There is conflicting authority on this issue (*compare, People v Page*, 162 NY 272, 276 [rape victim's prompt complaint to neighbor is not " 'other evidence' " within meaning of statute requiring corrob-

---

* We reject defendant's claim that the court's determination to submit only two items of corroboration, the complainant's changed demeanor and the defendant's post-arrest admissions, is binding on the prosecution. The People's submission of a written request to charge pertaining to four items of alleged corroboration preserves their objection for this Court's review (*People v Hoke*, 62 NY2d 1022).

oration for sex offenses]; *People v Badia, supra, with People v Yannucci*, 283 NY 546, 550 [corroborating evidence included victim's prompt complaint]; *People v Reed*, 125 AD2d 343; *People v Kulakowski*, 135 AD2d 1119, *lv denied* 70 NY2d 1007). However, in *People v McDaniel* (81 NY2d 10, 16), the Court of Appeals unambiguously stated: "[E]vidence that a victim of sexual assault promptly complained about the incident is admissible to corroborate the allegation that an assault took place". Although *McDaniel* discussed the issue of prompt outcry in a hearsay context, the Court's statement nonetheless supports the People's argument that the complainant's prompt outcries in this case should have been considered as corroboration of his unsworn testimony.

The prompt outcries in this case possessed the requisite independence for corroborative evidence since they occurred within a short time after the criminal incident and predated the victim's unsworn testimony. Thus, these prompt outcries may not be considered mere "repetition" of the complainant's unsworn testimony (*People v Badia, supra*, at 7).

*People v Badia* (*supra*) is distinguishable. In that case, the victim's prompt complaint was the sole evidence of corroboration in the case. In addition, the complainant had given a prior inconsistent version of the incident, which called into question the reliability of her account. Here, in contrast, other corroborative evidence existed and the complainant gave a detailed, consistent account of the attack. While prompt outcry evidence alone may not suffice to corroborate the testimony of an unsworn witness, it may be considered by the jury on the issue of corroboration under CPL 60.20 (*People v Watson*, 57 AD2d 143, 148, *revd on other grounds* 45 NY2d 867).

Moreover, *Badia* relied on a principle applicable in accomplice corroboration cases that "[c]orroborative evidence may not rely to any extent on the complaining witness's testimony" (*supra*, at 7). That principle applies in accomplice cases because the purpose of the corroboration requirement there is to prevent the falsification of evidence by an accomplice attempting to curry favor with the authorities (*see, People v Groff, supra; People v Hudson*, 51 NY2d 233, 238). However, this is an unsworn witness case, where the purpose of corroboration is to ensure the general trustworthiness of the unsworn testimony (*see, People v Groff, supra*, at 107-108). Accordingly, the principle is far less compelling in these circumstances.

There is also independent evidence connecting defendant to the crime. Here, defendant's statement to the police showed him to have had the exclusive opportunity to commit the crime

(*see, People v Groff, supra,* at 110-111 [under certain circumstances, the opportunity to commit the crime can be sufficient to establish identity]; *see also, People v Dearstyne,* 230 AD2d 953, 959, *lv denied* 89 NY2d 921 [medical record and mother's testimony sufficiently corroborated unsworn testimony since it established defendant's opportunity to commit crime and that crime was committed]; *cf., People v Badia, supra,* at 6 [no evidence even remotely connecting defendant to time and place of the crime]; *People v Doellner,* 87 AD2d 987). Defendant's statement places him in the same bed as the complainant, at the precise time of the alleged attack. Only defendant's denial of any wrongdoing deviates from the complainant's testimony. Notwithstanding that defendant's statement is ultimately exculpatory, "[a]ll that is necessary is to connect the defendant with the crime in such a way that the jury may be reasonably satisfied that the [witness] is telling the truth" (*People v Daniels,* 37 NY2d 624, 630; *People v Groff, supra,* at 110).

Perhaps the most powerful evidence of corroboration was the recovery by the police of the can of cooking oil from the exact location described by the complainant, and identified by him. Although rejected by the trial court as too generic to have any probative significance, in fact, this corroborative evidence tends to establish *both* that a crime was committed and that defendant committed it. While the recovery of the oil would be insignificant if viewed in isolation, it dovetails so perfectly with the seven-year old complainant's narrative of the events that it significantly enhances the reliability of his account.

Viewing the evidence of the complainant's changed demeanor, his prompt outcries, defendant's statement and the recovery of the physical evidence cumulatively, as is appropriate (*see, People v Tomczack,* 189 AD2d 926, 927, *lv denied* 81 NY2d 977; *People v Springer,* 127 AD2d 250, 254, *affd* 71 NY2d 997; *see generally, People v Nisoff, supra*), sufficient independent evidence existed to corroborate the complainant's unsworn testimony. As the Court of Appeals has stated: " 'Matters in themselves of seeming indifference * * * may so harmonize with the [witness's] narrative as to have a tendency to furnish the necessary connection between the defendant and the crime' " (*People v Morhouse,* 21 NY2d 66, 74, quoting *People v Dixon,* 231 NY 111, 116-117; *see also, People v Groff, supra,* at 110). Accordingly, the motion for a trial order of dismissal should have been denied. Concur—Rosenberger, J. P., Nardelli, Mazzarelli, Andrias and Saxe, JJ.