*277 OPINION OF THE COURT
Denis R. Hurley, J.
By omnibus motion, the defendant has made application for various forms of relief. In response, the People have consented to some portions of the defendant’s demands and opposed the balance. The motion is decided as follows:
INSPECTION AND DISMISSAL OF THE GRAND JURY PROCEEDING
That portion of the defendant’s motion which requests that the Grand Jury minutes be inspected is granted. (CPL 210.30 [3].)
After an in camera inspection, it is the determination of this court that the presentation of this matter to the Grand Jury was so fatally flawed as to require the dismissal of the indictment. Indeed, and as more fully explored below, it is notable that while the presentation was relatively short, almost each portion was marked by at least one issue which must be resolved against the prosecution.
To begin with, the very first page of the transcript reveals that, in his prepresentation remarks to the jurors, the prosecutor’s general inquiries were interrupted by an unidentified grand juror. During a cursory colloquy, the juror indicated that while not personally acquainted with the defendant, he or she apparently knew the defendant. Although this matter was not explored, the juror’s suggestion that he or she "sit out” was met by the prosecutor’s remark that "If you have any problems you can remain where you were [sic] but I ask you to refrain from voting then [sic] ” There is no indication that the juror left the Grand Jury room.
In this regard, the court is troubled that, despite the juror’s obvious discomfort, he or she was allowed to remain among the panel while contemporaneously disenfranchised. Indeed, no inquiry was made to resolve the possibility of bias or prejudice which might either warrant the removal or transfer of that juror. (See, e.g., CPL 190.20 [2] [b]; [6].) Moreover, this issue appears to be resurrected at the very end of the proceeding when, during the charge and prior to deliberations, the following exchange developed:
"[By the prosecutor]: Any questions? Yes, sir?
"grand juror: I was just curious. How old is this man? Is — do you have any idea?
"grand juror: Cheeseman.
*278 "grand juror: He’s going to be forty-five.”
Besides the questionable relevancy of this line of inquiry, the analysis of this portion of the record is haunted by the fact that the unidentified juror who initially indicated some knowledge of the defendant and requested to "sit out” was still within the Grand Jury room. Indeed, it is notable that the defendant’s age appears nowhere else in the transcript and no documents or other records were received in evidence. By process of elimination and in the absence of another explanation (or, as appropriate, a curative instruction), it is not illogical to infer that the defendant’s age was, in all likelihood, provided by the , unsworn testimony of that very same juror.[1]
Equally troubling are the facts and circumstances surrounding portions of the prosecution’s case-in-chief. By way of background, the complainant is a child who, unfortunately, suffers from Down’s syndrome. Apparently due to that fact, the prosecution initially announced that the complainant and his mother would be before the Grand Jury contemporaneously. Thereafter, both mother and child entered, remained, and left together. Due to their contemporaneous appearance, however, additional difficulties arise.
Initially, of course, it is highly irregular to have more than one person contemporaneously appear before a Grand Jury. This practice is not, however, without exception as there are statutorily provided occasions when a person may accompany a witness during that witness’ Grand Jury testimony. (CPL 190.25 [3].) Additionally and besides these statutory exceptions, a body of case law has evolved which turns on the question of whether the appearance has caused the possibility of prejudice to the defendant. (See, e.g., People v Di Falco, 44 NY2d 482 [1978]; People v Wilson, 77 AD2d 713 [3d Dept 1980].) Juxtaposing these statutes and rules of law to the facts of this case, however, the court finds this portion of the proceeding at bar to be totally outside of acceptable practice.
For example, the Legislature has provided that certain professionals may be present in the Grand Jury room so as to supply emotional support to a child. (CPL 190.25 [3] [h].) Among the caveats to this exception are the requirements *279 that such professionals are "first” mandated to take an oath of secrecy as to all matters before the Grand Jury and that they may not participate in the proceedings or assist the witness in answering. (CPL 190.25 [3] [h].)
Even if, arguendo, the mother were considered as a "professional” so as to be embraced by this statute, such a finding would not alter the fact that the statute’s requirements were unsatisfied. Juxtaposing that statute to the facts of this case, it is clear that (1) the mandated oath was not given, (2) the child’s mother participated in the proceeding, and (3) she assisted him in testifying. Indeed, and although the record of the child’s testimony is less than three typewritten pages, it contains seven occasions wherein she voluntarily interjected herself.
Moreover, and even if it was alternatively contended that the mother acted as a translator pursuant to CPL 190.25 (3) (d), the analysis yields the same result as that provision’s requirements for an appropriate oath were not satisfied. (See, e.g., People v Rodriguez, 145 Misc 2d 105 [Sup Ct, Queens County 1989].)
Lastly, the contemporaneous appearance of mother and child is also inappropriate when measured against the prejudice test found within case law. As indicated, she interjected her remarks seven times during her son’s testimony. Of and by itself, that is prejudicial to the defendant. (Cf., People v Wilson, supra [mere presence of mother during child’s testimony insufficient to require dismissal of indictment].)
Besides the problems raised by the joint appearance of these two witnesses, the individual testimony of each is also not without difficulty.
For example, the record reflects that the mother testified first and while the child was present; immediately thereafter, the child testified. In the first instance, a review of the mother’s testimony reveals it to be almost replete with hearsay and double hearsay. While such evidence is not per se incompetent (People v Oakley, 28 NY2d 309 [1971]), it so colors the testimony of this case as to be distracting. Moreover, this effect was not deterred by the prosecutor who failed to instruct either the witness or the grand jurors as to such testimony.
The child’s testimony is even more troubling. First of all, he *280 was not sworn. Although this irregularity undoubtedly[2] arose from the fact that he suffers from Down’s syndrome, the court is constrained to note that the testimony was impermissibly received. In this regard, CPL 60.20 provides:
"1. Any person may be a witness in a criminal proceeding unless the court finds that, by reason of infancy or mental disease or defect, he does not possess sufficient intelligence or capacity to justify the reception of his evidence.
"2. Every witness more than twelve years old may testify under oath unless the court is satisfied that such witness cannot, as a result of mental disease or defect, understand the nature of an oath. A child less than twelve years old may not testify under oath unless the court is satisfied that he understands the nature of an oath. If the court is not so satisfied, such child or such witness over tv/elve years old who cannot, as a result of mental disease or defect, understand the nature of an oath may nevertheless be permitted to give unsworn [testimony] if the court is satisfied that the witness possesses sufficient intelligence and capacity to justify the reception thereof.
"3. A defendant may not be convicted of an offense solely upon unsworn evidence given pursuant to subdivision two” (emphasis supplied).
In the matter at bar, no inquiry was made to determine whether the witness was sufficiently intelligent to justify the reception of his unsworn testimony. (See, People v Groff, 71 NY2d 101 [1987]; People v Nisoff 36 MY2d 560 [1975].) Additionally compounding the omission of the oath and/or inquiry, the members of the Grand Jury were not given any instruction (i.e., CPL 60.20 [3]) as to what weight, if any, they were to attribute to this unsworn testimony.
Lastly, the child’s testimony is further burdened by other matters, including the fact that he was present during his mother’s testimony. At the very least, his testimony is, therefore, tainted on its face. Aggravating this difficulty is the further problem of the substance of his testimony. For example, the record demonstrates that many of his responses to prosecutor’s inquiries were recorded as "(unintelligible)” or "(nodding)”. Obviously, the "unintelligible” cannot be salvaged; it does not, however, establish a record with which to *281 measure the alleged criminality underlying the presentation. This difficulty is not cured by the fact that some of these responses are followed by the voluntarily interjected explanations of his mother for, as indicated above, she was not qualified to provide this information. Similarly, the "nodding” responses are not followed by what would be an appropriate remark (i.e., that the record should reflect that he was indicating a "Yes” or "No”).
None of these remarks should be taken so as to imply that the court is unsympathetic to either the unfortunate plight of the complaining witness or that of the prosecution in presenting such cases. To the contrary, the court’s analysis of this matter is, hopefully, constructive and balanced by the rightfully superior considerations which must — at every stage of the proceeding — be fully afforded to the defendant.
The court is, therefore, regrettably constrained to find that, for the individual and collective reasons herein indicated, this presentation was so defective as to warrant an order granting the defendant’s motion for dismissal of the indictment. (CPL 210.20 [1] [c]; 210.35 [5].) The prosecution is given leave to resubmit the matter to another Grand Jury and the presently existing bail conditions are continued to 45 days from the date of the issuance of this order. (CPL 210.45 [9].)
In making these determinations, the court has not found it necessary to release the Grand Jury minutes pursuant to CPL 210.30 (3).
In view of this finding, the defendant’s application for discovery is denied as moot at this time, subject to an appropriate reapplication should a new indictment be issued.

. In lieu of what might have been a curative instruction the prosecutor subsequently volunteered that, while he couldn’t testify, the defendant’s date of birth was "10/3/45”.

. The child’s age is unclear from the transcript. A witness and apparent friend of the child was under 12 at the time of the presentation. After an appropriate inquiry, he was allowed to testify under oath.